2009 ND 55

**In the Interest of M.W., a child.**

**Divide County Sheriff's Department, by Lauren Throntveit, Petitioner and Appellee**

v.

**M.W., a child, T.F., mother, and C.W., father, Respondents and Appellants.**

**No. 20080190.**

Supreme Court of North Dakota.

April 7, 2009.

Elizabeth L. Pendlay, State's Attorney, Crosby, N.D., for petitioner and appellee.

Tom P. Slorby, Slorby Law Office, Minot, N.D., for respondents and appellants.

MARING, Justice.

[¶ 1] M.W. appeals a juvenile court order transferring jurisdiction to district court under N.D.C.C. § 27–20–34(1)(b). We reverse the juvenile court's order and remand for the court to consider whether transfer to district court is appropriate under N.D.C.C. § 27–20–34(1)(c).

I

[¶ 2] The State alleged M.W. committed five counts of delinquent acts of gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(1)(d) and (2)(a). The State requested a transfer of jurisdiction from juvenile court to district court. The juvenile court held a hearing and considered whether to transfer the case to district court under N.D.C.C. § 27–20–34(1)(b). The court applied the requirements of N.D.C.C. § 27–20–34(1)(b) and explained, "the only issues to be determined today is the child's age, whether there was probable cause to believe the child committed the alleged delinquent act, providing the delinquent act shown is gross sexual imposition." The court stated it did not need to consider whether the child was amenable to treatment because it was not considering whether to transfer the case under N.D.C.C. § 27–20–34(1)(c).

[¶ 3] The court then stated, "if counsel has any objection to that interpretation, it's appropriate to voice it now." M.W. objected, arguing:

Your Honor, it's the position of the Respondents that [N.D.C.C. § 27–20–34(1)(b) ] does not apply. In that section[, it] does refer to the delinquent act of gross sexual imposition, as charged in the petition. However, it is the position of the respondents that [N.D.C.C. § 27–20–34(1)(b) ] as it applies to gross sexual imposition requires more than probable cause to believe that act has been committed, but also requires that there be a showing, [ ], that the gross sexual imposition was on-of a victim by force or by threat of imminent death, serious bodily injury or kidnaping, that that following phrase applies to gross sexual imposition as well as to attempted gross sexual imposition.

The petition does not charge or allege any of those alternatives of threat—of force or threat of imminent death, serious bodily injury or kidnaping. And it's my understanding that the petitioner will stipulate that not only is that not alleged in the petition, but it is not alleged factually as well as legally. And it would be our position that the—that this hearing should be addressing the— the issues pursuant to [N.D.C.C. § 27–20–34(1)(c) ].

[¶ 4] The court disagreed with M.W.'s interpretation of the statute. It concluded that the clear reading of N.D.C.C. § 27–20–34(1)(b) provides that "gross sexual imposition is a stand alone offense," and the State does not have to show "that gross sexual imposition was accompanied by force or threat of imminent death, serious bodily injury or kidnaping." The juvenile court granted the transfer request.

[¶ 5] M.W. appeals, arguing the juvenile court erred in its interpretation of N.D.C.C. § 27–20–34(1)(b).

## II

[¶ 6] This appeal turns entirely on the interpretation of N.D.C.C. § 27–20–34(1)(b). We have previously explained how we review a court's interpretation of a statute:

Interpretation of a statute is a question of law fully reviewable on appeal. Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*State v. Fasteen,* 2007 ND 162, ¶ 8, 740 N.W.2d 60 (citations omitted).

[¶ 7] The relevant portion of the transferring statute at issue is N.D.C.C. § 27–20–34(1)(b) (emphasis added), which provides:

After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances or resolutions of this state, the court before hearing the petition on its merits shall transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if:

. . .

b. The child was fourteen years of age or more at the time of the alleged conduct and the court determines that there is probable cause to believe the child committed the alleged delinquent act and the delinquent act involves the offense of murder or attempted murder; *gross sexual imposition or the attempted gross sexual imposition of a victim by force or by threat of imminent death, serious bodily injury, or kidnapping*

. . . .

[¶ 8] M.W. argues the modifying clause "by force or by threat of imminent death, serious bodily injury, or kidnapping" modifies both gross sexual imposition and attempted gross sexual imposition. The

State argues the clause modifies only attempted gross sexual imposition. Both parties interpret the statute differently, but neither argues the statute is ambiguous. We conclude N.D.C.C. § 27–20–34(1)(b) is ambiguous because it is susceptible to different, but rational, meanings. *See Phipps v. N.D. Dept. of Transp.,* 2002 ND 112, ¶¶ 15–16, 646 N.W.2d 704 (concluding an ambiguity existed when each party argued for a different, but rational, interpretation of a statute). When a statute is ambiguous, we may consider:

1. The object sought to be attained.
2. The circumstances under which the statute was enacted.
3. The legislative history.
4. The common law or former statutory provisions, including laws upon the same or similar subjects.
5. The consequences of a particular construction.
6. The administrative construction of the statute.
7. The preamble.

N.D.C.C. § 1–02–39.

[¶ 9] In December 1993, Governor Ed Schafer appointed seventeen individuals with expertise or interest in juvenile justice to the North Dakota Juvenile Justice Task Force ("Task Force"). *Juvenile Justice in North Dakota: Building On Our Strengths,* Report of the North Dakota Juvenile Justice Task Force, 1 (1994). Attorney General Heidi Heitkamp chaired the Task Force. *Id.* The Task Force was created because, "[w]hile the system has been successful in most cases, the recent increase in juvenile violence and victimization demands a careful evaluation of the juvenile justice system." *Id.* The Task Force reported that although North Dakota consistently ranked 49th or 50th among the states in juvenile arrest rates, juvenile arrest and referral numbers had increased. *Id.* Further, from 1980 to 1993, violent assaults and sexual crimes committed by juveniles became a larger proportion of juvenile crimes. *Id.* Anecdotal evidence also suggested that younger juveniles were being charged with violent crimes. *Id.* The Task Force was "directed to review the 'law and practice' of the current system." *Id.*

[¶ 10] The Task Force held public meetings and hearings throughout North Dakota. *Id.* at 1–2. It toured juvenile facilities, visited junior and senior high schools, and held discussions with juvenile justice professionals. *Id.* at 2. Based on the testimony and information gathered, the Attorney General's Office drafted bills that revised several provisions of the Uniform Juvenile Court Act. *See Hearing on S.B. 2264 Before the Senate Judiciary Comm.,* 54th N.D. Legis. Sess. (Mar. 29, 1995) (testimony of Sen. Wayne Stenehjem). Senate Bill 2264 was introduced in 1995. 1995 N.D. Sess. Laws, ch. 124, § 15. A provision of S.B. 2264 modified N.D.C.C § 27–20–34(1)(b). *Id.* The Task Force was concerned that the previous transfer statute placed a heavy burden on the State to prove a juvenile committing a serious, violent crime should be tried as an adult. *Juvenile Justice in North Dakota: Building On Our Strengths,* Report of the North Dakota Juvenile Justice Task Force, 7 (1994). The Task Force considered testimony urging that N.D.C.C. § 27–20–34 be modified so juvenile cases involving violent crimes could be more easily transferred to adult court. *See Minutes of the Juvenile Justice Task Force,* January 11, 1994 ("The emphasis of the Task Force will be on confidentiality transfers (for violent/repeat offenders)...."); *Minutes of the Juvenile Justice Task Force,* February 14, 1994 ("System needs fine-tuning ... Concerned about violent and habitual offenders."); *Minutes of the Juvenile Justice Task Force,* April 11, 1994 ("Juveniles should be tried as adults at age 16 for violent crimes."). The Task Force concluded, "The present system does not ade-

quately reflect public sentiment that adult crime should be adjudicated in adult court." *Juvenile Justice in North Dakota: Building On Our Strengths,* Report of the North Dakota Juvenile Justice Task Force, 7 (1994).

[¶ 11]   Testimony during the legislative hearings also indicates that the bill focused on the need to transfer serious, violent crimes to adult court.   Governor Ed Schafer testified the bill attempted to ensure that North Dakota would maintain its status as one of the safest states and make the juvenile justice system more effective in dealing with juveniles that break the law.   *Hearing on S.B. 2264 Before the House Judiciary Comm.,* 54th N.D. Legis. Sess. (Jan. 25, 1995) (testimony of Gov. Ed Schafer) [*"Hearing on S.B. 2264 "*].   Senator Wayne Stenehjem testified that the Task Force drafted strict laws for juvenile offenders, and the transferring provision of the bill provided automatic transfers to adult court for certain violent offenders. *Hearing on S.B. 2264, supra* (testimony of Sen. Wayne Stenehjem).   Representative Gerry Wilkie testified that themes underlying the bill, among others, included a focus on younger and more violent juvenile offenders and violent and habitual offenders.   *Hearing on S.B. 2264, supra* (testimony of Rep. Gerry L. Wilkie).   Attorney General Heidi Heitkamp also testified that the Task Force was concerned with violent offenders.   *Hearing on S.B. 2264, supra* (testimony of Attorney General Heidi Heitkamp).   The object sought to be attained, circumstances under which the statute was enacted, and the legislative history of N.D.C.C.   § 27–20–34(1)(b)   demonstrate the underlying concern of the transfer statute was transferring cases involving violent crime by juvenile offenders to adult court.

[¶ 12]   The legislative history also indicates the legislature intended that the clause, "by force or by threat of imminent death, serious bodily injury, or kidnapping," modify both gross sexual imposition and attempted gross sexual imposition. The Task Force report includes a highlight of the transfer statute.   It states,

A juvenile offender age fourteen or older is automatically transferred into adult court if the juvenile court determines there is probable cause to believe the juvenile committed murder or attempted murder; or, by force, threat of imminent death, serious bodily injury, or kidnapping, the juvenile committed gross sexual imposition or attempted gross sexual imposition.

*Juvenile Justice in North Dakota: Building On Our Strengths,* Report of the North Dakota Juvenile Justice Task Force, 7 (1994).   This indicates the legislature intended the clause to modify both gross sexual imposition and attempted gross sexual imposition.   Attorney General Heitkamp's testimony also supports such an interpretation.   Attorney General Heitkamp testified that the State could petition to transfer juveniles to district court if, "by force, threat of imminent death, serious bodily injury, or kidnapping, the juvenile committed gross sexual imposition or attempted   gross   sexual   imposition." *Hearing on S.B. 2264, supra* (testimony of Attorney General Heidi Heitkamp).   We conclude the legislative history reflects the legislature's intent that a juvenile court is to automatically transfer a case involving gross sexual imposition or attempted gross sexual imposition only if the gross sexual imposition or attempted gross sexual imposition charge is "by force or by threat of imminent death, serious bodily injury, or kidnapping."

### III

[¶ 13]   Therefore, after reviewing the legislative history of N.D.C.C. § 27–20–34, we conclude the legislature intended the clause requiring force or threat of imminent death, serious bodily injury, or

kidnapping modifies both gross sexual imposition and attempted gross sexual imposition. We conclude the juvenile court erred in its interpretation of N.D.C.C. § 27–20–34(1)(b). We reverse the juvenile court's order transferring M.W.'s case to district court and remand for a hearing where the juvenile court can hear evidence from both parties and make a determination of whether transfer is appropriate under N.D.C.C. § 27–20–34(1)(c).

[¶ 14] GERALD W. VANDE WALLE, C.J., and ZANE ANDERSON, D.J., and DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

[¶ 15] The Honorable ZANE ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.