2010 ND 33

**Kathy WOLT, Plaintiff and Appellee**

v.

**Steve WOLT, Defendant and Appellant.**

**No. 20090126.**

Supreme Court of North Dakota.

Feb. 22, 2010.

Suzanne Marie Schweigert, Bismarck, N.D., for plaintiff and appellee.

Justin Dale Hager, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   Steve Wolt appeals from a domestic violence protection order restraining him from contact with Kathy Wolt for two years until April 7, 2011.   Because we conclude the district court did not err in denying Steve Wolt's motion to dismiss and did not err in granting the domestic violence protection order, we affirm.

I

[¶ 2]   This appeal stems from an order granting Kathy Wolt's petition for a domestic violence protection order.   Kathy Wolt and Steve Wolt had been engaged in contentious divorce proceedings, culminating in a two-day trial in January 2009 and a final divorce judgment entered on March 16, 2009.   In the divorce proceeding the district court issued a memorandum opinion, dated March 11, 2009, dividing the parties' marital property, awarding physical custody of the parties' minor children to Kathy Wolt, and initially granting Steve Wolt limited, supervised visitation and limiting him to two 20–minute phone calls per week with the children to be monitored by Kathy Wolt.   The district court's memorandum opinion stated that Steve Wolt had significantly alienated the children from Kathy Wolt.   *See Wolt v. Wolt*, 2010 ND 26, ¶ 1 (affirming district court divorce judgment).

[¶ 3]   On March 13, 2009, two days after the district court's memorandum opinion, Kathy Wolt sought a disorderly conduct restraining order under N.D.C.C. § 12.1–31.2–01 against Steve Wolt. In her petition for the restraining order, she alleged she was in her car at a stoplight in Mandan when Steve Wolt pulled up next to her in his vehicle and began shouting obscenities at her, specifically threatening her life by saying, "I'm going to kill you, you fucking bitch."   Kathy Wolt immediately reported the incident to law enforcement and sought a disorderly conduct restraining order.

The district court entered a temporary disorderly conduct restraining order on March 13, 2009. After a hearing on March 27, 2009, the court granted a final restraining order that day effective until March 27, 2010. Steve Wolt did not appeal the disorderly conduct restraining order.

[¶ 4] Before entry of the final disorderly conduct restraining order, Kathy Wolt also filed a petition dated March 26, 2009, for a domestic violence protection order against Steve Wolt under N.D.C.C. ch. 14–07.1. The district court issued a temporary domestic violence protection order dated the same day. In her March 26, 2009, petition, Kathy Wolt reiterated the March 13, 2009, threat, and an incident on March 24 or 25, 2009, where Steve Wolt called her cell phone and left a message calling her a "cheap whore," asserting that "he is glad the kids hate [her] and that [she] can play this message to anyone that [she] want[s] to[, for example,] Judge, Sheriff." Kathy Wolt's petition also alleged incidents where Steve Wolt was verbally and physically abusive to her in the past, striking her in the face and giving her a black eye, and claimed "Steve's actions show that he is unstoppable and he can do as he pleases any time he wants." Both the March 26, 2009 petition and temporary domestic violence protection order were filed in the district court on March 27, 2009, the same day the court issued the permanent disorderly conduct restraining order.

[¶ 5] Steve Wolt filed an affidavit and response to the temporary domestic violence protection order, denying the allegations and asserting recent domestic violence by Kathy Wolt. He also filed an expedited motion to dismiss or vacate the temporary domestic violence protection order. Kathy Wolt responded with an additional affidavit in support of her original petition, stating:

5. March 5, 2009 Steve came into the marital home … against Court Orders and stole the computer, desk, fax machine, and printer. I reported the theft to the State[']s Attorney's office, but was informed that it was a civil matter that needed to be handled with my divorce attorney.

6. On March 13, 2009, Steve saw me on the east end of Main Street in Bismarck [sic] and pulled up beside me and threatened to kill me. For fear of safety, I immediately filed a Temporary Restraining Order. A hearing was held on Friday, March 27th on the matter and the Judge Ordered that the Restraining Order stay in place for a period of one year. Steve has already violated the Restraining Order by continuing to contact me thus I had no choice but to file for a Protection Order. Steve continues to threaten me, and uses the kids and makes them promises that he can't keep in an attempt to alienate them from me.

7. On March 20, 2009, the children called Steve for one of their Court Order and telephone calls. Steve started telling the children *"Dad is doing everything possible through the court system"* and then proceeded to say "[Child's name], *is she standing right there listening to you?"* At that point I hung up the phone.

8. On March 25, 2009, the children made another telephone call to their Dad. Steve started saying *"Are you guys even allowed to watch TV, I know she …"* and at that point I disconnected the phone. Less than two minutes later, Steve called my cell phone and left me a voice message telling me that I'm a "cheap whore" and that he just loves it

that the kids hate me and asked me who I think I am hanging up on him and his kids. He told me to play this message to anyone, including the "judge/lawyers/sheriff".

9. On April 6, 2009, when the kids and Steve were having visitation at the Family Safety Center, the Family Safety Center called me at 4:41 p.m. and told me that they had to stop the visit because Steve was inappropriately talking to the kids. Tracy Miller, Director of the Family Safety Center drafted a letter to inform the Court (Judge Wefald) that Mr. Wolt's visiting privileges at the Family Safety Center were terminated due to his inappropriate behaviors. . . .

. . . .

11. I am asking that a Protection Order be granted in this matter. I feel that is the only thing that will prohibit Steve from threatening me or jeopardizing my safety. Steve is a very angry individual who needs treatment. Police reports will evidence the same. Steve has alienated our children from me, and as of April 2nd has had his supervised visitation taken away, thus his anger toward me is not improving. He needs help and until he receives the same, I need to be protected by having a Protection Order in place.

. . . .

14. For the reasons stated above, I would ask that Steve's Motion for Stay Pending Appeal be denied and that the Judgment dated March 16, 2009 remain in place. I would also ask that the Court enter the Protection Order that I am seeking in this case to keep me safe from Steve.

(Emphasis in original.)

[¶ 6] After an April 7, 2009, hearing on Kathy Wolt's petition, the court found she was credible and Steve Wolt had threatened her with imminent physical harm. The court issued a domestic violence protection order effective for a period of two years, until April 7, 2011.

II

■ [¶ 7] On appeal, Steve Wolt argues the district court erred as a matter of law in denying his motion to dismiss based on the doctrine of res judicata. He argues Kathy Wolt is barred from bringing this action for a domestic violence protection order, which he purports alleged no new facts, because she had a disorderly conduct restraining order in place at the time of the hearing. Although Steve Wolt argues the "exact same facts" were alleged for the domestic violence protection order, he concedes Kathy Wolt added an incident of alleged past abuse occurring twelve years earlier and a potential violation of the disorderly conduct restraining order, which he argues should have been irrelevant.

[¶ 8] In *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 10, 773 N.W.2d 420, we outlined the application of res judicata and collateral estoppel:

Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to [the] parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory. Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a

different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.

*Hager,* at ¶ 10 (quoting *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.,* 2007 ND 36, ¶ 13, 729 N.W.2d 101).

[¶ 9] This Court has explained that N.D.C.C. § 14–07.1–02 is a remedial statute "which we construe 'liberally with a view to effecting its objects and to promoting justice.'" *Gaab v. Ochsner,* 2001 ND 195, ¶ 5, 636 N.W.2d 669 (quotation omitted). The statute's purpose is to protect domestic violence victims from further harm. *Id.* Further, N.D.C.C. § 14–07.1–07 explicitly provides for the statute's non-exclusivity of remedy, stating, "Any proceeding under sections 14–07.1–01 through 14–07.1–08 *is in addition to any other civil or criminal remedies.*" (Emphasis added.)

[¶ 10] Here, the district court reasoned that the "relief available through a protection hearing proceeding is different than that that's available in a disorderly conduct proceeding. The [conduct for finding] disorderly conduct is defined differently from domestic violence." This Court has said, "Like the domestic violence protection order statute, the disorderly conduct restraining order statute creates a special summary proceeding and directs a hearing upon order of the district court" and that "[b]oth statutes seek to quickly and effectively combat volatile situations before any tragic escalation." *Skadberg v. Skadberg,* 2002 ND 97, ¶ 13, 644 N.W.2d 873. However, we believe the district court correctly recognized the differing definitions, grounds, and available relief for granting a disorderly conduct restraining order and for granting a domestic violence protection order.

[¶ 11] Although both statutory schemes similarly create special summary proceedings and seek to avert tragic escalation of volatile situations, there are some important distinctions. Under N.D.C.C. § 12.1–31.2–01, "disorderly conduct" is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person," but "does not include constitutionally protected activity." The court may grant a disorderly conduct restraining order, requiring an individual to stop the disorderly conduct or have no contact with the person applying for the order, upon meeting certain procedural requirements and if, after a hearing, the court finds "reasonable grounds to believe that the respondent has engaged in disorderly conduct." *See* N.D.C.C. § 12.1–31.2–01(4), (5).

[¶ 12] Unlike N.D.C.C. ch. 12.1–31.2, however, N.D.C.C. ch. 14–07.1 defines conduct sufficient to grant a protection order, i.e., "domestic violence" under N.D.C.C. § 14–07.1–01(2), and specifically contemplates an action brought by any "family or household member" or other person of sufficient relationship. *See* N.D.C.C. §§ 14–07.1–01(4), 14–07.1–02(1). A court may enter a domestic violence protection order after notice and a hearing on a "showing of actual or imminent domestic violence," N.D.C.C. § 14–07.1–02(4), and in addition to restraining any party from any other person, the court's protection order may also include a variety of other relief, such as excluding the respondent from a dwelling, awarding temporary custody or visitation of children, requiring counseling, requiring payment of support, awarding temporary use of personal property, or requiring the respondent to surrender firearms. *See* N.D.C.C. § 14–07.1–02(4)(a)–(g). We conclude that while the statutes

have some similar goals, the special proceedings contemplated under N.D.C.C. chs. 12.1–31.2 and 14–07.1 plainly have differing criteria and relief.

[¶ 13] Under varying factual circumstances other courts have also rejected application of res judicata to the granting of a domestic violence protection order. *See McComas v. Kirn*, 105 P.3d 1130, 1135–36 (Alaska 2005) (holding husband's crime of threats of harm against wife supported domestic violence protective order issuance, actions were not too remote in time, and order was not barred by prior denial of requested order because "a change in circumstance" justified the subsequent order); *Muma v. Muma*, 115 Wash.App. 1, 60 P.3d 592, 595 (2002) (holding res judicata did not bar former wife from seeking renewed protection order against former husband even though former wife failed to renew prior order, and refusing "to construe the law so as to require that [the former wife] wait until [the former husband] commits further acts of violence against her or their children" to seek a protection order). *But see Eagle v. Johnson*, 159 N.C.App. 701, 583 S.E.2d 346, 347 (2003) (holding prior complaint filed in another county seeking a domestic violence protective order and court's dismissal in the other county were admissible in current action for protective order to consider whether res judicata defense was applicable).

[¶ 14] Although Steve Wolt asserts the "exact same facts" underlie the issuance of both the disorderly conduct restraining order and the domestic violence protection order, Kathy Wolt provided additional facts supporting the subsequent issuance of the domestic violence protection order. Under the plain language of N.D.C.C. § 14–07.1–07, the legislature clearly pro-

vided that proceedings under N.D.C.C. §§ 14–07.1–01 through 14–07.1–08 are "in addition to any other civil or criminal remedies." We conclude Kathy Wolt is not barred by the doctrine of res judicata from subsequently petitioning for and receiving a domestic violence protection order. To the contrary, based on the district court's prior issuance of the disorderly conduct restraining order, which was not appealed, Steve Wolt is estopped from challenging the underlying factual basis for the issuance of the disorderly conduct restraining order in this case, specifically the March 13, 2009, incident, in which he threatened Kathy Wolt's life. *See Hager*, 2009 ND 180, ¶ 10, 773 N.W.2d 420 (issue preclusion forecloses relitigation of issues of fact in second action which were litigated in prior action).

[¶ 15] We conclude res judicata did not bar entry of the domestic violence protection order, and the district court did not err in denying Steve Wolt's motion to dismiss or vacate.

### III

[¶ 16] Steve Wolt argues the district court erred as a matter of law by granting the domestic violence protection order. He claims there was insufficient evidence to support the order.

▮▮▮▮ [¶ 17] "A district court's finding of domestic violence is a finding of fact that will not be overturned unless it is clearly erroneous." *Ficklin v. Ficklin*, 2006 ND 40, ¶ 11, 710 N.W.2d 387 (citing *Frisk v. Frisk*, 2005 ND 154, ¶ 6, 703 N.W.2d 341). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake

has been made. *Lovcik v. Ellingson*, 1997 ND 201, ¶ 10, 569 N.W.2d 697. Whether the district court has misinterpreted the domestic violence statute is a question of law, fully reviewable on appeal. *Ficklin*, at ¶ 11; *Lawrence v. Delkamp*, 2000 ND 214, ¶ 7, 620 N.W.2d 151.

[¶ 18] An action under N.D.C.C. ch. 14–07.1 for a domestic violence protection order is a civil action primarily for injunctive relief. *See Ficklin*, 2006 ND 40, ¶ 12, 710 N.W.2d 387; *Lovcik*, 1997 ND 201, ¶ 11, 569 N.W.2d 697. The petitioner seeking the protection order must prove "actual or imminent domestic violence" by a preponderance of the evidence. *Lovcik*, at ¶ 11 (quoting N.D.C.C. § 14–07.1–02(4)). In deciding whether domestic violence is actual or imminent, past abusive behavior is a relevant factor for consideration. *Lovcik*, at ¶ 16. Further, "[t]he context and history of the relationship between the parties is also a relevant factor to consider." *Ficklin*, at ¶ 12 (citing *Peters–Riemers v. Riemers*, 2001 ND 62, ¶ 8, 624 N.W.2d 83).

[¶ 19] "Domestic violence" is defined to include:

> physical harm, bodily injury, sexual activity compelled by physical force, assault, or *the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault*, not committed in self-defense, on the complaining family or household members.

N.D.C.C. § 14–07.1–01(2) (emphasis added). Under N.D.C.C. § 14–07.1–02(4), when the "domestic violence" justifying a protection order is premised on "fear," the harm feared by the petitioner must be "actual or imminent." *See also Ficklin*, 2006 ND 40, ¶ 13, 710 N.W.2d 387; *Lawrence*, 2000 ND 214, ¶ 6, 620 N.W.2d 151. This Court has construed "imminent" as " '[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.' " *Ficklin*, 2006 ND 40, ¶ 14, 710 N.W.2d 387 (quoting *Steckler v. Steckler*, 492 N.W.2d 76, 80 (N.D.1992)). Further, this Court interpreted "actual" as " '[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible.' " *Ficklin*, at ¶ 14 (quoting *Steckler*, 492 N.W.2d at 81).

[¶ 20] Steve Wolt argues this case does not involve actual or imminent fear of harm and is more akin to *Lawrence*, 2000 ND 214, 620 N.W.2d 151, and *Ficklin*, 2006 ND 40, 710 N.W.2d 387, than to *Lovcik*, 1997 ND 201, 569 N.W.2d 697. In *Ficklin*, at ¶¶ 1, 19–20, this Court reversed the issuance of a domestic violence protection order and discussed *Lovcik* and *Lawrence*:

> In *Lovcik*, we recognized that statements were sufficient to support a finding of domestic violence because of the threat of imminent physical harm. 1997 ND 201, ¶¶ 12–13, 569 N.W.2d 697. But the facts in *Lovcik* are distinguishable from [the *Ficklin*] case. In *Lovcik*, a previous protection order had been entered against the father for committing violent physical acts of aggression against the mother, including pushing her against a wall, choking her while she was holding one of the children, and pushing her to the ground. *Id.* at ¶ 3. After the parties had attended a court hearing on custody and child support modification, the father became angry and made several hostile telephone calls to the mother using harassing and de-

rogatory language. *Id.* at ¶ 7. The series of angry threatening calls made the mother immediately fear for her safety. *Id.* at ¶ 8. She "became nauseated and shook from fear," and she immediately locked all doors and windows of the home and called the police to request protection. *Id.* at ¶¶ 8, 12. The court found the father's harassing calls caused the mother to have fear of imminent physical harm and also found that her fear was reasonable because of her past experience of having been physically abused by the perpetrator. *Id.* at ¶ 13. We affirmed the court's finding of domestic violence, concluding under the clearly erroneous standard of review the evidence supported the court's finding there was a fear of imminent physical harm.

The facts of [the *Ficklin*] case are much closer to the facts in *Lawrence v. Delkamp* where the relevant threat made by the father was that he would "beat the crap out of" the mother. 2000 ND 214, ¶ 5, 620 N.W.2d 151. Lawrence also told the mother that he could "eliminate" their son in a boating accident, and that the mother would not see her son again. *Id.* He threatened not to return the child to his mother unless she let him claim the child as an exemption on his tax return. *Id.* The court made no finding of physical violence and made no finding that "at the time Lawrence made the threats Delkamp was put in fear of immediate or soon to be inflicted physical harm." *Id.* at ¶¶ 6, 10. Because the threats were of future conduct, even though the remarks were "serious and reprehensible," we held that the court was clearly erroneous when it determined that the threats could be defined as actual or imminent domestic violence. *Id.* at ¶¶ 8, 12.

[¶ 21] In *Ficklin*, 2006 ND 40, ¶ 2, 710 N.W.2d 387, the wife's petition for a domestic violence protection order alleged that, during an argument between the couple, the husband had told her that he would burn down the family home if he did not get to keep it, that the husband had treated her like a child and a baby, and that he had called her a "bitch." During the subsequent hearing, the wife testified that his statement about burning down the home made her feel afraid and that she felt her children's safety could be in danger. *Id.* at ¶ 5. The husband testified that he merely suggested that they sell the home or "maybe burn it down," but that he did not say it in a threatening way. *Id.* at ¶ 6. In concluding the district court clearly erred in issuing the protection order, this Court held the district court made findings which were insufficient to support the order. *Id.* at ¶ 17. This Court held fear of a potential harm alone was not sufficient for a domestic violence protection order because the statute requires "actual or imminent domestic violence," and the wife's fear was of a perceived possibility. *Id.* at ¶ 21. Further, this Court held that although there was evidence to support a finding that the wife was in fear, there was no evidence in the record that her fear was of imminent harm. *Id.* at ¶ 22.

▬ [¶ 22] Here, Steve Wolt argues there is insufficient evidence to support the district court's issuance of the domestic violence protection order because there was no evidence of a fear of imminent harm. He asserts this Court should be left with a definite and firm conviction a mistake was made.

[¶ 23] During the hearing, the parties testified:

THE COURT: All right. Ms. Wolt, please tell me what happened in the

incident involving the car. Tell me what the facts are.

PETITIONER: The incident on March 13th?

THE COURT: Uh-huh.

PETITIONER: On the east end of Mandan Main Street and Steve was coming from off the strip. And when he realized it was me, about halfway through the intersection, I could see his hands flying already. And he pulled up right next to me—I was on the inside lane—and he said, I'm going to kill you, you fucking bitch. And I moved up a little bit, and he thought my light turned green and then he took off.

THE COURT: How is it you were able to hear him?

PETITIONER: He was screaming to the top of his lungs.

THE COURT: Were the car windows open?

PETITIONER: No.

THE COURT: Okay. And has he contacted you since the disorderly conduct order was entered?

PETITIONER: On the 24th of March.

THE COURT: And how did that occur?

PETITIONER: He left a voice mail on my cell phone.

THE COURT: And what did he say?

PETITIONER: Do you want me to play it for you?

THE COURT: No. I want you to tell me what he said.

PETITIONER: He called me a cheap whore. He said, who do I think I am to disconnect the phone between him and his kids when they're talking. He don't care who I play this in front of, the judge, the sheriff. He wishes I would just drop dead. What else did he say on there?

THE COURT: Have you made a police report concerning that incident?

PETITIONER: I did not.

THE COURT: All right. Mr. Wolt, what is it that you think the facts are with regard to the incident on March 13th?

RESPONDENT: Your Honor, the facts were, I didn't realize—I was on a business call, and me and a person that I was having trouble with collecting money were having an argument on the phone. When I come around the corner, I was more than past even with her car before I even realized it was her. And I just kept driving.

[¶ 24] Steve Wolt argues the district court erred in finding the March 13 incident occurred, because he denied making the threat and the "uncontested logistics of the case make it impossible" for Kathy Wolt's story to be believed. He argues there is no possible way Kathy Wolt could have heard him yelling at her during the March 13 incident. Assuming Steve Wolt is not estopped from contesting the March 13 incident occurred, his argument involves the district court's determination of credibility and weight to be given to the parties' testimony. "A choice between two permissible views of the evidence is not clearly erroneous. We respect the opportunity of the trial court to weigh the credibility of the witnesses." *Morton County Soc. Serv. Bd. v. Schumacher*, 2004 ND 31, ¶ 16, 674 N.W.2d 505 (citation and quotation omitted). Here, the district court was faced with conflicting testimony and found Kathy Wolt credible.

[¶ 25] Steve Wolt argues that his prior conduct in striking Kathy Wolt occurred

twelve years earlier and is irrelevant and that the district court overlooked an incident in April 2008 in which Kathy Wolt had struck him with a telephone. Kathy Wolt argues, however, there was sufficient evidence to grant the domestic violence protection order, including additional new facts of a violation of the existing restraining order, another threat on her life, and more harassing and derogatory comments. Kathy Wolt asserts sufficient evidence was presented in her March 26, 2009, petition; her April 1, 2009, affidavit; and her April 7, 2009, testimony.

[¶ 26]   As indicated, the district court found Kathy Wolt's testimony to be credible, concluding:

> Based on the record before me *I do find that the petitioner is credible.* I believe the defendant *threatened imminent physical harm to her* and that the protection order is going to be entered. It will be entered for a period of two years, and it will restrict the respondent as the temporary order did.

(Emphasis added.)

[¶ 27]   Steve Wolt further argues there was no allegation or evidence of fear, nor did the court make any specific findings regarding fear. Kathy Wolt asserts evidence of "imminent fear" includes Steve Wolt's violation of the district court's prior restraining order and the fact she immediately went to the law enforcement center after Steve Wolt threatened to kill her. Although Steve Wolt argues the court did not find Kathy Wolt was placed in actual or imminent fear, her affidavit submitted in support of her initial petition for the domestic violence protection order specifically asserts that "[f]or fear of safety, [she] immediately filed a Temporary Restraining Order" and that she had "no choice but

to file for [Domestic Violence] Protection Order" after Steve Wolt purportedly violated the restraining order by continuing to contact and threaten her. Further, in her affidavit, she stated that she asked for the protection order because she felt "that [was] the only thing that [would] prohibit Steve from threatening [her] or jeopardizing [her] safety" and "to keep [her] safe from Steve." In her original sworn petition, Kathy Wolt also asserted, "Steve's actions show that he is unstoppable and he can do as he pleases any time he wants."

[¶ 28]   At the hearing, the district court specifically found Kathy Wolt was credible, which necessarily includes her assertions of fear of imminent harm. The district court made that finding immediately after Steve Wolt's attorney had argued that Kathy Wolt did not allege imminent fear or the threat of harm. The district court plainly rejected Steve Wolt's argument. The record in this case reflects a prior history of physical violence, a contentious divorce, a threat that Steve Wolt was going to kill Kathy Wolt, imposition of a disorderly conduct restraining order, a threatening voice message purportedly in violation of the restraining order, and testimony and conduct suggesting that Steve Wolt would not be controlled by the restraining order. Based on our review of the record, we conclude Steve Wolt's threats constitute sufficient evidence of the infliction of fear of imminent physical harm.

[¶ 29]   Additionally, although occurring after the court announced it would grant the domestic violence protection order, we note the following exchange on the record as the court's order was being entered:

> THE COURT: I am granting the order. If he violates the order, the state's attorney will decide how to charge the offense.

MS. SCHWEIGERT: Your Honor, may I ask regrading firearms? Is that part of the order, that his firearms will be under the protection order?

THE COURT: Here, will you give me the order, please.

[Steve Wolt]: *I tell you what, Justin, if it can get any worse, it will.*

MR. [Justin] HAGER: Are we waiting for the order to be served?

THE COURT: I'm wondering if your client is able to control himself even in the courtroom.

MR. HAGER: He won't make any other comments, Your Honor.

THE COURT: He will not be allowed to have possession of any firearms.

(Emphasis added.) We believe this exchange is also illustrative of Steve Wolt's continuing threat, despite the granting of the protection order.

[¶ 30] We conclude that district court's finding of domestic violence was not induced by an erroneous view of the law, nor are we left with a definite and firm conviction a mistake has been made. Based on our review of the record, we conclude that Kathy Wolt presented sufficient evidence showing imminent domestic violence and that Steve Wolt inflicted fear upon her of imminent physical harm.

### IV

[¶ 31] The district court order is affirmed.

[¶ 32] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, JJ., and JAMES M. BEKKEN, D.J., concur.

[¶ 33] The Honorable JAMES M. BEKKEN, D.J., sitting in place of SANDSTROM, J., disqualified.