Filed 6/21/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 119

In the Interest of R.A., a Child

State of North Dakota, Petitioner and Appellee

v.

R.A., said child, S.A., father of said child, 

T.A., mother of said child, Respondents

R.A., said child Appellant

No. 20100343

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Laurie A. Fontaine, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Haley Lorelle Wamstad (argued), Assistant State’s Attorney, and Abby Siewert (appeared), third-year law student, P.O. Box 5607, Grand Forks, N.D. 58206-5607, for petitioner and appellee.

DeWayne Alan Johnston, 221 South 4th Street, Grand Forks, N.D. 58201, for respondent and appellant R.A.

Interest of R.A.

No. 20100343

Maring, Justice.

[¶1] R.A. appeals from a juvenile court order transferring jurisdiction to district court under N.D.C.C. § 27-20-34(1)(b) and a district court order affirming the transfer.  We conclude the juvenile court did not err in finding there was probable cause R.A. committed the offense of gross sexual imposition by threat, the juvenile court did not misinterpret or misapply the transfer statute, and R.A.’s confrontation rights were not violated.  We affirm. 

I

[¶2] In March 2010, a delinquency petition and notice of intent to transfer to district court was filed, alleging R.A. committed the offenses of gross sexual imposition in violation of N.D.C.C. § 12.1-20-03(1)(a) and (3)(a), terrorizing in violation of N.D.C.C. § 12.1-17-04, and harassment in violation of N.D.C.C. § 12.1-17-07(1)(a).  The State alleged R.A. engaged in a sexual act with another juvenile, A.H., by compelling A.H. to submit by threat of imminent death or serious bodily injury.  The State alleged R.A. sent A.H. text messages and written messages through the Internet containing threats and stating A.H. must perform sexual acts with R.A. or certain individuals would be physically harmed or killed.  After a hearing on the transfer request, the judicial referee found there was probable cause to believe R.A. committed the offense of gross sexual imposition by force or by threat of imminent death, serious bodily injury, or kidnapping, and ordered the case be transferred to district court under N.D.C.C. § 27-20-34(1)(b).  

[¶3] R.A. requested a district court judge review the judicial referee’s findings and order, arguing the evidence did not support a finding of probable cause, the judicial referee misinterpreted or misapplied the transfer statute because the statute requires the threats be to the victim and not another person, and his confrontation rights were violated.  The district court affirmed and adopted the judicial referee’s findings and order. 

II

[¶4] This Court’s standard of review of a juvenile court’s order is well established:

Under N.D.R.Civ.P. 52(a), this Court reviews a juvenile court’s factual findings under a clearly erroneous standard of review, with due regard given to the opportunity of the juvenile court to judge the credibility of the witnesses.  A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law.  This Court reviews questions of law de novo.

Interest of A.R.
, 2010 ND 84, ¶ 5, 781 N.W.2d 644.  

[¶5] The juvenile court found that probable cause exists to believe R.A. committed the offense of gross sexual imposition of a victim by force or by threat of imminent death, serious bodily injury, or kidnapping, and ordered the case transferred to district court under N.D.C.C. § 27-20-34.  Section 27-20-34, N.D.C.C., governs the transfer of a case from a juvenile court to district court and provides:

1. After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances or resolutions of this state, the court before hearing the petition on its merits shall transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if:

 

. . . .

 

b. The child was fourteen years of age or more at the time of the alleged conduct and the court determines that there is probable cause to believe the child committed the alleged delinquent act and the delinquent act involves the offense of . . . gross sexual imposition or the attempted gross sexual imposition of a victim by force or by threat of imminent death, serious bodily injury, or kidnapping . . . .

A person is guilty of gross sexual imposition if the person engages in a sexual act with another or causes another to engage in a sexual act by compelling the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.  N.D.C.C. § 12.1-20-03(1)(a).  A sexual act is:

Sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any other portion of the human body and the penis, anus, or vulva; or the use of an object which comes in contact with the victim’s anus, vulva, or penis.  For the purposes of this subsection, sexual contact between the penis and the vulva, the penis and the anus, any other portion of the human body and the anus or vulva, or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight.

N.D.C.C. § 12.1-20-02(4).  

A

[¶6] Under N.D.C.C. § 27-20-34(1)(b), a juvenile court shall transfer jurisdiction to the district court when the alleged delinquent act involves gross sexual imposition if the juvenile court determines there is probable cause to believe the juvenile committed the offense by force or by threat of imminent death, serious bodily injury, or kidnapping. R.A. argues the juvenile court erred in transferring jurisdiction to the district court because the State failed to establish probable cause and failed to present any evidence that he acted by force or that his conduct presented an imminent threat to A.H. 

[¶7] Probable cause is a minimal burden of proof, and the State has met the burden of proving probable cause exists if “there is a definite probability based on substantial evidence the offense has been committed.”  
In re L.A.G.
, 1999 ND 219, ¶ 11, 602 N.W.2d 516.  “Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.”  
Id.
  The existence of probable cause is a question of law.  
Id.
 

[¶8] The State does not claim R.A. used physical force to compel A.H. to submit to sexual acts.  The State claims and the juvenile court found R.A. made threats of imminent death or serious bodily injury to compel A.H. to engage in sexual acts.  Section 27-20-34, N.D.C.C., does not define imminent; however, this Court has defined “imminent” in domestic violence cases for purposes of determining if there was fear of imminent physical harm.  
See, e.g.
, 
Lenton v. Lenton
, 2010 ND 125, 784 N.W.2d 131; 
Wolt v. Wolt
, 2010 ND 33, 778 N.W.2d 802; 
Ficklin v. Ficklin
, 2006 ND 40, 710 N.W.2d 387.  We have said “imminent” means “‘near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.’”  
Wolt
, at ¶ 19 (quoting 
Ficklin
, at ¶ 14). 

[¶9] At the transfer hearing, A.H. testified about the events that lead to the allegations and copies of the text messages and other written messages she received were offered.  A.H. testified she was in a relationship with R.A. from November 2008 until August 2009 and they remained friends after the relationship ended.  A.H. testified she spoke with R.A. on the phone, received text messages from his cell phone number, and received other written messages from him through a social networking website, Facebook, almost every day between February 18, 2010, and February 28, 2010.  A.H. testified R.A. claimed he was receiving threats from drug dealers who were attempting to get his uncle to help them traffic drugs.  R.A. told A.H. the drug dealers were threatening to harm her as well and they could not go to the police or tell anyone about the threats because the drug dealers would find out and kill them.  A.H. testified R.A. told her they had to comply with the drug dealers demands at all times or “[A.H.] you get to watch me and they are gonna take my dick and shove it up your pussy and take a knife and put it there too and turn it around and rotate it.  Then they will just slit your throat but this is all of course after they rape you in front of me.”  R.A. told A.H. the drug dealers came to his house on February 18 and injected him with sodium pentothal and sexually assaulted him.  He told her the drugs made him very sick and he had to go to the hospital emergency room.  

[¶10] A.H. testified R.A. told her the drug dealers demanded they change their Facebook information to reflect they were in a relationship on February 19.  She testified that she did not comply with this demand fast enough and the drug dealers sent her a text message from R.A.’s cell phone claiming they were drugging R.A. because she did not comply with their demand.  A.H. testified she received other messages she believed were from the drug dealers advising her they were watching her and would make sure she complied with their demands.  

[¶11] There was evidence A.H. received a message from R.A.’s Facebook account on February 22, demanding A.H. be with R.A. sexually on February 23 and warning her they will kill R.A. if she does not comply.  A.H. testified she invited R.A. to her house on February 23, R.A. gave her a hickey and told her it was one of his demands, R.A. tried to have sex with her, there was penetration, and he claimed it was one of the demands.  A.H. testified she believed their actions satisfied the drug dealers’ demands. 

[¶12] A.H. testified she was getting ready to leave for a trip to New York with a group of friends on February 24, but before she left town R.A. called her and told her the drug dealers were demanding she come to his house and kiss him before she left town.  A.H. testified she was not able to go to R.A.’s house before she left and she was told R.A. was drugged as punishment for her failure to comply with the drug dealers’ demand.  A.H. testified she received text messages from R.A. on February 25, informing her he had to go to the hospital because he was very sick from being drugged again.  

[¶13] A.H. received a message from R.A.’s Facebook account while she was traveling to New York, demanding she tell her friends R.A. gave her a hickey, she buy R.A. an expensive gift, she call R.A. and meet with him as soon as she returns home, and they perform oral sex on each other.  The message also said R.A. would be drugged enough to make him sick if A.H. only completed two of the demands and R.A. would be electrocuted if she only completed one of the demands.  The message required A.H. to respond between 1 a.m. and 2 a.m. with her decision on the demands.  A.H. testified she tried to comply with the drug dealers demands while she was in New York, but her friends became suspicious of her behavior and she eventually told them about the threats.

[¶14] A.H. testified she received another message from the drug dealers on her Facebook account at approximately 11:30 p.m. on February 27.  The message said A.H. needed to apologize to R.A. for failing to tell him she loved him the night before, she needed to perform oral sex on R.A., and she had to agree to these demands by 1:00 a.m. or they would drug R.A. with sodium pentothal and he would suffer the next day.  A.H. testified she received multiple text messages from the drug dealers sent from R.A.’s cell phone in the early morning hours on February 28.  A.H. testified one of the messages demanded she either have sex with R.A. or perform oral sex on R.A or they would make “many people feel pain,” and the message said she had five minutes to decide.  A.H. testified that she attempted to negotiate with the drug dealers because she did not want to satisfy either of their demands, but they eventually told her she needed to give her answer or they would rape her.  

[¶15] A.H. testified that she returned to Grand Forks from New York on February 28 and the drug dealers demanded she be with R.A. sexually as soon as she returned home.  A.H. testified she invited R.A. to her house, she showed him the messages she had received, and they decided they should cooperate with the drug dealer’s demands.  A.H. testified R.A. briefly performed oral sex on her, but she quickly stopped him because she felt uncomfortable and thought they had done enough to fulfill the drug dealers’ demands.  A.H. testified that she attempted to satisfy with the drug dealers’ demand that she perform oral sex on R.A. but she was very upset, she kept crying, R.A. became impatient because she was taking so long, R.A. reminded her they would drug him and he could die if she did not comply with the demands, and she eventually sucked R.A.’s penis.  She testified she thought they had satisfied the drug dealers demands and she only participated to keep R.A. and herself safe and alive. 

[¶16] A.H. testified she received another message from the drug dealers on her Facebook account approximately a half an hour after R.A. left her house.  The message said the drug dealers were not satisfied, it implied they were able to see inside her house, they knew she had been crying, they demanded she go over to R.A.’s house by 3:00 a.m. and give him his present or they would drug R.A. with “truth serum” and he would probably die the next day, and it advised her that they will continue to watch her.  A.H. testified the message scared her and she locked the doors in her house, closed the blinds, and went into her bedroom and cried. 

[¶17] A.H.’s mother testified that on the night of February 28, she learned from A.H.’s friends that they were worried about A.H. and they showed her the messages on A.H.’s Facebook account.  A.H.’s mother testified she went to R.A.’s house around 11:00 p.m. that night with A.H.’s father.  A.H.’s mother testified that they met with R.A. and one of his parents and that R.A. initially said he was being threatened, but he later admitted he wrote the messages and there was no one else involved.  

[¶18] Probable cause is a minimal burden of proof.  
L.A.G.
, 1999 ND 219, ¶ 11, 602 N.W.2d 516.  On this record, the evidence presented supports the juvenile court’s finding there is probable cause to believe R.A. committed the offense.  Evidence presented established A.H. received threats almost every day between February 18, 2010, and February 28, 2010; A.H. received a message on February 22 demanding she “be with R.A. sexually” on February 23 or R.A. would be killed; A.H. received a message on February 27 at 11:30 p.m. telling her she had to agree to perform oral sex on R.A. by 1:00 a.m. or R.A. would be drugged immediately and would suffer; A.H. received a text message during the early morning hours of February 28 stating she had five minutes to decide whether she would have sex with R.A. or perform oral sex on R.A. before the drug dealers would make many people feel pain; the threats contained deadlines that A.H. had to comply with or she and R.A. would be harmed or killed; and R.A. told A.H. the drug dealers drugged him on two occasions as punishment for A.H.’s failure to comply with their demands and the drugs harmed him and made him very ill.  Further, A.H. testified she believed she was being watched and the drug dealers could show up at any time to harm them or kill R.A.  A.H. testified the threats made her very scared.  She would shake, cry, lock the doors, and close the blinds.  The evidence supports a probability that A.H. feared imminent physical harm.  
See
 
Lovcik v. Ellingson
, 1997 ND 201, ¶¶ 8, 12, 569 N.W.2d 697 (showing of fear of imminent physical harm from phone calls that made petitioner fear for her safety, she locked doors and windows, and she experienced nausea and shaking).  The record contains evidence that supports the threats compelled A.H. to engage in sexual acts with R.A.

[¶19] R.A. argues there was not sufficient evidence to support a finding of probable cause because the threats of physical harm were threats of future conduct and were not imminent.  He contends this case is similar to 
Lawrence v. Delkamp
, 2000 ND 214, 620 N.W.2d 151, and 
Ficklin
, 2006 ND 40, 710 N.W.2d 387, cases in which this Court held a district court’s findings of domestic violence were clearly erroneous because the threats of physical harm were not imminent.  In 
Lawrence
, at ¶ 5, the father threatened the mother saying he would have his girlfriend “beat the crap out of” the mother and he could “eliminate” their son in a boating accident.  The Court said the district court’s findings of actual or imminent domestic violence were clearly erroneous because the threats were qualified threats of possible future conduct, the court did not make any findings that the mother was put in fear of immediate or soon to be inflicted physical harm at the time the threats were made, and no history of physical assault or violence was presented.  
Id.
 at ¶¶ 8-12.  In 
Ficklin
, at ¶ 2, the wife alleged her husband told her he would burn down the family home if he did not get to keep it, he treated her like a child, and he called her a “bitch.”  The Court held the issuance of a domestic violence protection order was clearly erroneous because the threats could not be defined as actual or imminent domestic violence when the evidence only revealed the wife’s fear was of a perceived future possibility and not of imminent harm.  
Id.
 at ¶¶ 21-22.  

[¶20] This case is distinguishable from both 
Lawrence
 and 
Ficklin
.  Here, the juvenile court found it reasonable that A.H. believed the threats were being carried out and that R.A. had been harmed when she did not comply with the demands.  The threats demanded A.H. comply by certain deadlines or R.A. would be harmed immediately.  A.H. testified she believed the drug dealers were watching her constantly, and the messages indicated they were able to monitor her activities at school and in her house.  A.H. testified she believed the drug dealers would be able to act immediately if she did not comply with their deadlines and demands.  Imminent does not mean immediate; rather, it means near at hand and close rather than touching.  
Wolt
, 2010 ND 33, ¶ 19, 778 N.W.2d 802.  The evidence presented supports probable cause to believe threats of imminent death or serious bodily injury occurred. 

[¶21] Although R.A. claims there is conflicting evidence and A.H.’s actions do not denote fear of imminent physical harm, the juvenile court does not make credibility determinations on the evidence presented in transfer hearings.  
See
 
State v. Smith
, 2010 ND 89, ¶ 8, 781 N.W.2d 650 (holding district court does not make credibility determinations in a preliminary hearing to determine whether probable cause exists, unless as a matter of law the testimony is implausible or incredible).  A juvenile court transfer hearing is equivalent to a preliminary examination in a criminal case and the purpose is not to determine guilt or innocence.  
See
 
id.
; 
see also
 Explanatory Note, N.D.R.Ev. 1101 (transfer hearing is equivalent to a preliminary examination in a criminal case).  When conflicting evidence or an issue of credibility exist, it is a question of fact for the jury.  
Smith
, at ¶ 8. 

[¶22] Based upon our review of this record and transcripts, we conclude the juvenile court did not err in finding there is substantial evidence establishing probable cause to believe R.A. committed the offense of gross sexual imposition by threat of imminent death or serious bodily injury.  

B

[¶23] R.A. argues the juvenile court misinterpreted and misapplied N.D.C.C. § 27-

20-34.  He contends that under the plain language of the statute a gross sexual imposition case may not be transferred from juvenile court to district court unless probable cause exists to believe there were threats of imminent harm to the victim.  He claims the evidence does not demonstrate A.H. suffered threats of imminent harm.

[¶24] 
The interpretation of a statute is a question of law.  
In re M.W.
, 2009 ND 55, ¶ 6, 764 N.W.2d 185.  We look at the plain language of the statute and give each word its ordinary meaning.  
Id.
; N.D.C.C. § 1-02-02.  If a statute is ambiguous or if adherence to the strict letter would lead to an absurd or ludicrous result, a court may look at extrinsic aids, including legislative history, to interpret the statute.  
M.W.
, at ¶ 6; N.D.C.C. § 1-02-39. 
 A statute is ambiguous if it is susceptible to different, rational meanings.  
M.W.
, at ¶ 6.  “‘We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.’”  
Id.
 (quoting 
State v. Fasteen
, 2007 ND 162, ¶ 8, 740 N.W.2d 60).

[¶25] The plain language of N.D.C.C. § 27-20-34(1)(b) provides the court shall transfer the offense of gross sexual imposition or attempted gross sexual imposition of a victim by threat of imminent death, serious bodily injury, or kidnapping.  The plain language does not say the threat must be to the victim.  The statute is not ambiguous. 

[¶26] R.A. is charged with gross sexual imposition in violation of N.D.C.C. § 12.1-

20-03(1)(a), which states that an individual is guilty of gross sexual imposition if he engages in a sexual act with another or causes another to engage in a sexual act by “compel[ling] the victim to submit . . . by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.”  Although R.A. argues N.D.C.C. § 27-20-34 requires the threat be inflicted on the victim because the statute does not use the language “inflicted on any human being” as N.D.C.C. § 12.1-20-

03(1)(a), the difference in the wording of the two statutes is not significant.  The transfer statute includes a list of offenses the legislature has determined should be transferred to district court.  
See
 
Hearing on S.B. 2264 Before the House Judiciary Comm.
, 54th N.D. Legis. Sess. (Jan. 25, 1995) (testimony of Governor Edward Schafer) (transfers to adult court are automatic at age fourteen for the crimes of murder, attempted murder, kidnapping, or gross sexual imposition by force or threat of force).  There are other types of gross sexual imposition the transfer statute does not apply to.  The transfer statute applies to cases involving the offense of gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(a).   

[¶27] Furthermore, this Court has said the purpose of N.D.C.C. § 27-20-34 is to transfer serious, violent crimes to district court.  
M.W.
, 2009 ND 55, ¶ 11, 764 N.W.2d 185.  Gross sexual imposition by force or threat of imminent harm is a statutorily violent and serious crime to be transferred to district court.  

[¶28] In this case, the juvenile court found there were threats of imminent death, serious bodily harm, or kidnapping to both R.A. and A.H., the victim.  The evidence supports the court’s finding.  We conclude the juvenile court did not misinterpret or misapply the juvenile transfer statute, and the case was properly transferred to district court.

III

[¶29] R.A. argues his Sixth Amendment Confrontation Rights were violated because he was not allowed to cross-examine A.H. about her sexual history with R.A. during the transfer hearing. 

[¶30] The Confrontation Clause of United States Constitution gives a criminal defendant the right to physically face someone who testifies against him or her and the right to cross examine.  U.S. Const. amend. VI; 
State v. Woinarowicz
, 2006 ND 179, ¶ 8, 720 N.W. 2d 635.  The United States Supreme Court has held a juvenile in a juvenile transfer hearing is not entitled to all the constitutional guarantees that an accused receives in a criminal trial, but it is a “critically important” proceeding and it must satisfy the basic requirements of due process and fairness. 
See
 
Kent v. United States
, 383 U.S. 541, 553-62 (1966); 
see also
 
In re K.G.
, 295 N.W.2d 323 (N.D. 1980) (Uniform Juvenile Court Act requires a transfer hearing include evidence produced by witnesses available for cross-examination).  However, the right to confrontation is a trial right and does not apply to the same extent at pretrial hearings. 
See
 
Woinarowicz
, at ¶¶ 9, 11.  R.A. has a statutory right to cross-examine adverse witnesses. N.D.C.C. § 27-20-27(1).  A.H. testified at the transfer hearing, and R.A. cross-examined her.

[¶31] This is not a confrontation issue; rather, it is an issue of the admissibility of evidence.  A juvenile does not receive greater evidentiary protections during a juvenile transfer hearing than other criminal defendants receive during pretrial criminal proceedings.  “A juvenile court transfer hearing is equivalent to a preliminary examination in a criminal case which has relaxed standards for admission of evidence.”  N.D.R.Ev. 1101, explanatory note.  The rules of evidence do not apply during a transfer hearing. 
See
 N.D.R.Ev. 1101(d); 
see also
 
In re C.R.M.
, 552 N.W.2d 324, 327 (N.D. 1996) (the rules of evidence do not apply at a transfer hearing and hearsay testimony is admissible). 

[¶32] We conclude R.A.’s confrontation rights were not violated.

IV

[¶33] We conclude the evidence supports the court’s finding of probable cause to believe R.A. committed the offense of gross sexual imposition by threat, the judicial referee did not misapply the juvenile transfer statute, and R.A.’s confrontation rights were not violated.  We affirm the juvenile court’s order granting the State’s motion to transfer the case to district court. 

[¶34] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale V. Sandstrom