Filed 2/23/06 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2006 ND 40

Angela Ficklin, Petitioner and Appellee

v.

John Ficklin, Respondent and Appellant

No. 20050364

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Joel D. Medd, Judge.

REVERSED.

Opinion of the Court by Kapsner, Justice.

Richard R. LeMay (argued), 20 1st St. SW, Ste. 201, P.O. Box 1666, Minot, ND 58702-1666; Angela J. Swenson (on brief), Community Violence Intervention Center, 211 S. 4th St., Grand Forks, ND 58201; Jodi L. Colling (appeared), Legal Services of North Dakota, 418 East Rosser Ave., Suite 320, Bismarck, ND 58501, for petitioner and appellee.

Kjersti Armstrong (argued), appearing under the Rule on the Limited Practice of Law by Law Students, and James D. Hovey (appeared), Pearson Christensen Cahill & Clapp, PLLP, 24 N. 4th St., P.O. Box 5758, Grand Forks, ND 58206-5758, for respondent and appellant.

Ficklin v. Ficklin

No. 20050364

Kapsner, Justice.

[¶1] 
John Ficklin appeals from a domestic violence protection order restraining him from contact with Angela Ficklin for six months until March 29, 2006.  Because of the court’s misinterpretation of the domestic violence protection order statute and the court’s inadequate findings, the issuance 
of the domestic violence protection order was error.
  We reverse.

I

[¶2] John Ficklin and Angela Ficklin were married in 2000.   Over the weekend of August 13-15, 2005, an argument between the couple ensued causing Angela Ficklin to ask John Ficklin to leave the family home.  On August 15, Angela Ficklin filed a petition for a temporary domestic violence protection order against John Ficklin.  The petition alleged that during their argument John Ficklin had told her he would burn down the home if he does not get to keep it.  The petition alleged John Ficklin treated her like a child and a baby and that he had called her a “bitch.”  A temporary domestic violence protection order was issued the same day the petition was filed.  John Ficklin moved out of the home upon receiving notice of the protection order.

[¶3] On September 1, 2005, a hearing was held on the merits of a permanent domestic violence protection order.  Angela Ficklin was represented by an attorney, but John Ficklin was not represented by counsel.  The hearing was continued until September 29, 2005, so John Ficklin could retain an attorney and present witnesses. 

[¶4] At the continued hearing, the parties testified about the argument that occurred in August.  As the argument escalated, Angela Ficklin asked John Ficklin to leave the home.  John Ficklin refused to leave.  The parties dispute what happened next.

[¶5] Angela Ficklin’s version of the incident was that John Ficklin said:  “If he had to leave the home, he said, that I wouldn’t get it.  That it wasn’t my home.  At that point in time, I had told him, all I had to do was make a phone call and he would be out of the home.  And he had made a threat if he didn’t get to stay that he would burn it down.”  Angela Ficklin testified John Ficklin’s statement about burning down the home made her feel afraid and that she felt her children’s safety could be in danger. 

[¶6] John Ficklin testified:  “The way I said it on burning down, we should sell it or maybe burn it down.  That’s why.  I didn’t say it in a threatful way.  As a matter of fact, on that fight, I believe, she snapped at me.  During that fight, I thought, I was controlling myself.  I was pretty mellow.  I just told her about the home and she started out at me about the judge.  She said any judge would agree with her about her kids not having a home.”  He stated there was no intent to threaten or harass Angela Ficklin.   On cross-examination, John Ficklin testified that he made the comment about burning down the home because “[e]verybody gets angry in fights, Ma’am.  Everybody.” 

[¶7] Both parties agree the argument that led Angela Ficklin to pursue a domestic violence protection order did not involve physical violence.  Neither party disputes that John Ficklin mentioned burning down the home.  The parties do dispute the nature and context in which the statement of burning down the home was used.  

[¶8] There was also testimony about a fight that happened three years ago over a computer.  Angela Ficklin testified:

Q.  Can you please explain to me and can you please tell me has there been in the years you have been married to Mr. Ficklin has he ever been physically violent with you?

A.  No.  There was one incident we had gotten into an argument over the computer.  He accused me of doing something I didn't do.  I got upset.  I hit him and I turned around and he called me a bitch and I slapped him back and told him I was not that and he had no right to say that and that's when he assaulted me out of anger. 

Police were called by Angela Ficklin’s mother to investigate the dispute.  The police report was not included in the record.  The record does not reflect any other incidents of physical violence between the parties. 

[¶9] The court continued the domestic violence protection order until March 29, 2006.  The court stated this was “one of those close cases.”   But ultimately the court concluded:  “I believe that if he does go to the home, that based on the past conduct of both parties that there is a danger of domestic violence.”  The court’s written findings consisted of an “X” on a standardized form next to a single finding that John Ficklin “represents a credible threat to the safety of the Petitioner or child(ren) living with the Petitioner.”  

[¶10] On appeal, John Ficklin argues the record does not support the issuance of a domestic violence protection order because of the lack of physical violence.  John Ficklin also argues the court misinterpreted the domestic violence protection order statute.  Angela Ficklin argues John Ficklin’s statement about burning down the home was sufficiently threatening to support an issuance of the domestic violence protection order.

II

[¶11] A district court’s finding of domestic violence is a finding of fact that will not be overturned unless it is clearly erroneous.  
Frisk v. Frisk
, 2005 ND 154, ¶ 6, 703 N.W.2d 341.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.  
Lovcik v. Ellingson
, 1997 ND 201, ¶ 10, 569 N.W.2d 697.  “The question whether the trial court has misinterpreted the domestic violence statute is a question of law that is fully reviewable on appeal.”  
Lawrence v. Delkamp
, 2000 ND 214, ¶ 7, 620 N.W.2d 151  (citing 
Ryan v. Flemming
, 533 N.W.2d 920, 923 (N.D. 1995)). 

[¶12] A domestic violence protection order is a civil action primarily for injunctive relief.  
Lovcik
, 1997 ND 201, ¶ 11, 569 N.W.2d 697.  The party seeking the protective order must prove actual or imminent domestic violence by a preponderance of the evidence.  
Id.
  Past abusive behavior is a relevant factor to consider in determining whether domestic violence is actual or imminent.  
Id.
 at ¶ 16.  The context and history of the relationship between the parties is also a relevant factor to consider.  
Peters-Riemers v. Riemers
, 2001 ND 62, ¶ 8, 624 N.W.2d 83 (citing 
Cesare v. Cesare
, 713 A.2d 390, 395 (N.J. 1998)).

[¶13] Before a court may enter a protection order, there must be “a showing of actual or imminent domestic violence.” N.D.C.C. 
§ 
14-07.1-02(4).  “Domestic violence” is statutorily defined under N.D.C.C. § 14-07.1-01(2) as including:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

When the type of domestic violence justifying a domestic violence protection order is based upon fear, the harm feared by the petitioner must be “actual or imminent.” N.D.C.C. § 14-07.1-02(4).

[¶14] We have construed “imminent” as meaning “[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.”  
Steckler v. Steckler
, 492 N.W.2d 76, 80 (N.D. 1992) (citing 
State v. Kurle
, 390 N.W.2d 48, 49 (N.D. 1986)).  “Actual” has been defined as “[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible.”  
Steckler
, 492 N.W.2d at 81 (citing Black’s Law Dictionary 34 (6th ed. (1990)).

[¶15] Under this framework, it is apparent that the court erred as a matter of law in interpreting the domestic violence statute.  Rather than basing the order on fear of imminent harm, the court’s focus appears to be the elimination of the possibility of harm by removing the respondent from the home.

[¶16] The court asked John Ficklin numerous questions to determine where he would live if the domestic violence protection order was not put in place.  It is unclear why the court made this inquiry.  While we have recognized that past actions can act as relevant and pragmatic evidence in assisting a court’s determination of whether domestic violence is actual or imminent, 
see, e.g.
, 
Steckler
, 492 N.W.2d at 81 (recognizing that a court need not await a more tragic event to take action), we have not held that where a party might live and the possibility of removing a party from the home is sufficient to issue a domestic violence protection order.  

[¶17] The court made two findings, neither of which is sufficient for the issuance of a protection order.  The court’s written order, using a standardized form, has only the finding that John Ficklin “represents a credible threat to the safety of the Petitioner or child(ren) living with the Petitioner.”  The court’s oral findings consisted of a statement that “if he does go to the home, that based on the past conduct of both parties that there is a danger of domestic violence.”  Under our protection order statute, “threats can only constitute domestic violence . . . if they constitute ‘the infliction of fear of imminent physical harm.’”  
Lawrence
, 2000 ND 214, ¶ 6, 620 N.W.2d 151. 

[¶18] The court made no findings with respect to the imminent nature of a threat of physical harm.  The court made no findings about a history of physical harm or bodily injury.  The court’s findings rest solely on a perceived possibility—a “danger” or a “credible threat” of domestic violence—rather than a reasonable fear of actual or imminent harm as required by statute.  A court has a duty to make accurate and adequate findings to support the issuance of an order and to allow for an intelligible review of a case on appeal.  We recognize standardized forms can aid in clerical and judicial efficiencies.  But the use of a standardized form does not excuse a court’s duty to make findings.  The court’s findings are clearly erroneous because the findings were induced by an erroneous interpretation of the domestic violence protection order statute.  
See
 
Frisk v. Frisk
, 2005 ND 154, ¶ 6, 703 N.W.2d 341 (recognizing a finding of domestic violence is a finding of fact that will not be overturned unless it is clearly erroneous).

[¶19] John Ficklin’s statement about burning down the home is distinguishable from the verbal threats found in our past cases to support the issuance of a domestic violence protection order.  
In 
Lovcik
, we recognized that statements were sufficient to support a finding of domestic violence
 because of the threat of imminent physical harm.  1997 ND 201, ¶¶ 12-13, 569 N.W.2d 697.  But the facts in 
Lovcik
 are distinguishable from this case.  In 
Lovcik
, a previous protection order had been entered against the father for committing violent physical acts of aggression against the mother, including pushing her against a wall, choking her while she was holding one of the children, and pushing her to the ground.  
Id.
 at ¶ 3.  After the parties had attended a court hearing on custody and child support modification, the father became angry and made several 
hostile telephone calls to the mother using harassing and derogatory language.  
Id.
 at ¶ 7.  The series of angry threatening calls made the mother immediately fear for her safety.  
Id.
 at ¶ 8.  She “became nauseated and shook from fear,” and she immediately locked all doors and windows of the home and called the police to request protection.  
Id.
 at ¶¶ 8, 12.  The court found the father’s harassing calls caused the mother to have fear of imminent physical harm and also found that her fear was reasonable because of her past experience of having been physically abused by the perpetrator.  
Id.
 at ¶ 13.  We affirmed the court’s finding of domestic violence, concluding under the clearly erroneous standard of review the evidence supported the court’s finding there was a fear of imminent physical harm.

[¶20] The facts of this case are much closer to the facts in 
Lawrence v. Delkamp
 where 
the relevant threat made by the father was that he would “beat the crap out of” the mother.  
2000 ND 214, ¶ 5, 620 N.W.2d 151. 
 Lawrence also told the mother that he could “eliminate” their son in a boating accident, and that the mother would not see her son again.  
Id.
  He threatened not to return the child to his mother unless she let him claim the child as an exemption on his tax return.  
Id.
  The court made no finding of physical violence and made no finding that “at the time Lawrence made the threats Delkamp was put in fear of immediate or soon to be inflicted physical harm.”  
Id.
 at ¶¶  6, 10.  Because the threats were of future conduct, even though the remarks were “serious and reprehensible,” we held that the court was clearly erroneous when it determined that the threats could be defined as actual or imminent domestic violence.  
Id.
 at 
¶¶ 8, 12
.

[¶21] Here, there was also a verbal threat relating to future conduct.  Angela Ficklin testified she was fearful of John Ficklin’s statement that he might actually burn the home down.  John Ficklin testified his statement was not meant to instill fear, but to describe a set of hypothetical options: “sell it or maybe burn it down.”  But fear of potential harm alone is not sufficient for the issuance of a protection order.  The statute clearly requires “actual or imminent domestic violence.”  N.D.C.C. § 14-07.1-

02(4).  While Angela Ficklin may have been in fear that John Ficklin might possibly burn down the home, her fear was of a perceived possibility.

[¶22] Although there is evidence to support a finding that Angela Ficklin was in fear, there is no evidence in the record that her fear was of imminent harm.  Angela Ficklin’s testimony was that John Ficklin said he would burn the home down if he did not get to keep it.  The use of the word “would” implies a future event, not an immediate burning.  Furthermore, Angela Ficklin’s actions after the comment was made suggest her fear was not of an imminent threat.  She stayed in the home after John Ficklin made the statement and did not attempt to leave.  Because of the court’s misinterpretation of the statute and the court’s inadequate findings, the issuance of the domestic violence protection order was clearly erroneous.

III

[¶23] The domestic violence protection order is reversed.

[¶24] Carol Ronning Kapsner

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.