THIS OPINION HAS NO PRECEDENTIAL VALUE. 
 IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS
 PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
 Julie D.
 Garcia, Respondent,
 v.
 Matthew D.
 Saski, Appellant.
 
 
 

Appeal From Anderson County
 Tommy B. Edwards, Family Court Judge
Memorandum Opinion No. 2008-MO-044
Submitted September 18, 2008  Filed
 November 10, 2008   
REVERSED

 
 
 
 Stephen
 K. Haigler, and Michael D. Glenn, both of Glenn, Haigler, McClain &
 Stathakis, of Anderson, for Appellant.
 Julie
 D. Garcia, of Pendleton, pro se Respondent.
 Attorney
 General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant
 Deputy Attorney General Salley W. Elliott, and Assistant Attorney General
 Michelle J. Parsons, all of Columbia, for Amicus Curiae. 
 
 
 

JUSTICE WALLER:  This is a direct appeal from a family court order of protection
 issued June 7, 2006.  We reverse.
FACTS
Appellant, Matthew Saski, was a patrolman with the Clemson
 University Police Department.  Respondent, Julie Garcia was his girlfriend for
 some period of time, and they had planned to get married.  They lived together
 for four weeks in April 2006.  
According to Garcia, on April 29, 2006, after Saski got home from
 work, they drank some wine, and Garcia went to bed early.   When Saski came
 into the bedroom around 3:30 a.m., she heard him crying in the shower.  He got
 into bed and pointed his middle finger upward toward the ceiling; when she
 asked what he was doing, he said he was praying.  She asked him what was wrong
 and he said, Im the devil, just kill me.  Saski then told Garcia he had
 killed her dog Angel, saying he had choked her.  He put the dogs body in the
 woods behind the house.  According to Garcia, Saski told her, I couldnt help
 it.  I couldnt stop.  Garcia went and slept in her sons bedroom and left
 early the next morning to go to a friends house.  They corresponded via text
 message that morning, and Garcia asked him to move out.  Saski moved out that
 day, and they had no further contact.  
Saski presented a different scenario.  He testified he was petting
 Angel on the sofa late that night and, as he reached for the remote control, the
 dog went to jump on him, so he pushed her away with his hand.  The dog landed
 on the floor and wasnt moving.  He picked her up and attempted to resuscitate
 Angel by blowing into her snout when green and brown stuff started coming out. 
 He took Angel outside and Garcias other dog, Charlie, was barking.    He
 realized Angel was dead, so he brought her into the woods so Charlie would stop
 barking.  Saski started crying, realizing hed killed the dog.  According to
 Saski, when Garcia asked him what was wrong, he said, Angels dead.  I think I
 killed her.  He then told her she choked, and I couldnt help her.  
Several days after the incident, Garcia applied to the family
 court for an order of protection on the basis of the dog incident.  After a hearing
 on May 5, 2006, Saski consented to an interim order mutually restricting the
 parties from coming near each other.   Garcia advised the court at that time
 she did not want Saski to be prevented from returning to his job as a police
 officer.  The family court decided to postpone a final ruling until it had the
 benefit of an autopsy report on the dog.  
A subsequent hearing was held on June 5, 2006.  Although the court
 found the autopsy was not inconsistent with either Garcias or Saskis version
 of events, the court issued the order of protection based on Garcias fear for
 her safety.  The order remained in effect for one year.  One provision of the
 order, was a Federal Firearms Prohibition, pursuant to 18 U.S.C. § 922.  
After his motion for rehearing was denied, Saski filed a petition
 for a writ of supersedeas, requesting the June 7, 2006 order of protection be
 stayed, and that the mutual restraining order which had been issued on May 19,
 2006, be allowed to remain in effect pending appeal.  Saski contended that
 because the order of protection prevented him from carrying a weapon, he would
 lose his job as a policeman with Clemson University Police Department.  His
 captain, James Gowan, filed a supporting affidavit indicating that if the order
 of protection stayed in place as written, Saski stood to lose his job on July
 15, 2006.   Supersedeas was denied.   
Saski appeals the order of protection, contending that there was
 no evidence of any abuse, nor the threat thereof, to Garcia.   We agree.
DISCUSSION[1]
We find the family court erred in issuing the order of protection
 in this case, because the record does not demonstrate Saski posed any threat of
 harm to Garcia or her family.  
The S.C. Protection from Domestic Abuse Act, S.C. Code Ann. §
 20-4-20 et seq. permits a family court to issue an order of protection to
 protect the petitioner or minor household members from the abuse of another
 household member.  S.C. Code Ann. § 20-4-20(f).  A household member is
 defined to include a male and female who are cohabiting or formerly have
 cohabited.  S.C. Code Ann. § 20-4-20(b) (iv).   Section 20-4-20 permits the
 filing of a petition for an order of protection by any household members in
 need of protection.  The petition must allege the existence of abuse to a
 household member.  It must state the specific time, place, details of the
 abuse, and other facts and circumstances upon which relief is sought.  S.C.
 Code Ann. § 20-4-40(b).  Abuse is defined by the statute as physical harm,
 bodily injury, assault, or the threat of physical harm, or sexual criminal
 offenses, as otherwise defined by statute, committed against a family or
 household member by a family or household member.   (Emphasis added).  
Citing this Courts recent opinion in Moore v. Moore,
 376 S.C. 467, 657 S.E.2d 743 (2008), the Attorney General contends it is irrelevant that there was
 no actual, direct threat of harm made by Saski toward Garcia; the AG asserts
 that under Moore, a court need not make a finding of actual abuse of a
 victim in order to issue an order of protection.  Our holding in Moore is inapposite.   
In Moore, a 15-year-old boy called police and reported that
 his father had become physically abusive with him and his mother and threatened
 them with a weapon.  The father was arrested and charged with criminal domestic
 violence, then released on bond.  The mother petitioned for an order of
 protection, and an emergency hearing was held within 24 hours pursuant to S.C.
 Code Ann. § 20-4-50(a).  At the emergency hearing, the family court made a
 final adjudication that the father had physically abused mother and son at that
 hearing.  On appeal, when father raised due process implications, this Court
 noted that we are concerned that a factual finding of physical abuse was
 finally adjudicated at this emergency hearing.  367 S.C. at 478, 657 S.E.2d at
 749.  Due to the emergency nature of the hearing, and the fact that it was held
 within 24 hours prior to the father retaining counsel, we opined:

 [A] definitive factual finding of physical abuse for a temporary
 Order of Protection is not only improper under the terms of the statute, but is
 also unnecessary to satisfy the governments interest. In our view, the
 Legislature provided for an emergency hearing, for the benefit of victims of domestic
 violence and did not intend for these protections to establish collateral
 consequences for the alleged abuser. 

Id.  Given the temporary nature of the emergency hearing, the Court
 held [a] review of these statutory prerequisites reveals that a definitive
 finding of physical abuse is not essential.  Id. at 480, 657 S.E.2d at
 750.  The Court went on to hold that:
[A]lthough the Act defines abuse to include physical abuse,
 bodily injury, and assault, it also recognizes that the threat of physical
 harm is sufficient to constitute a basis for the issuance of an Order of
 Protection as the result of an emergency hearing. S.C.Code Ann. § 20-4-20(a)(1)
 (1985 & Supp.2006).  We concluded that because the threat of a future
 occurrence is a sufficient basis upon which to issue an order of protection, a
 definitive finding of physical abuse is not mandated.  Id.
The Attorney General asserts the killing of Angel alone suggested
 an immediate and present danger to [Garcias] family, so as to constitute a
 sufficient threat of physical harm.  We disagree.
The emergency hearing in this case took place on May 5, 2006,
 approximately one week after the April 29th incident.  At that time, the court
 orally determined to issue a temporary mutual restraining order pending a final
 determination after receipt of the autopsy on the dog.   A subsequent hearing
 was held May 15, 2006, because Saski was not being allowed to work; Garcia
 indicated at this hearing that she did not object to Saski continuing his job. 
 At the May 15th hearing, the trial court concurred with counsels statement
 that Garcia indicated that Saski had not, during the whole sequence of events,
 threatened her in any way or said anything threatening to her.   However, she
 had indicated that his conduct made her feel threatened.
The final hearing was held June 5, 2006, after the family court
 reviewed the autopsy.  The autopsy report was inconclusive, but could not 
rule out blunt
 trauma.  The court found Garcia more credible, and found her fear for her
 safety was sufficient to warrant issuance of the order.  This was error.  
We find Garcias subjective fear for her safety does not warrant
 issuance of the order of protection, particularly given the facts that it was
 more than one month between the incident and the final hearing, Saski had moved
 out of the house, and the parties had had absolutely no contact in the
 interim.   We find the evidence did not demonstrate Saski posed any actual
 threat of physical harm to Garcia or her family.   Accord Kopelovich
 v. Kopelovich, 793 So.2d 31, 33 (Fl. App. 2nd Dist. 2001) (husbands threat
 of harm to family dog failed to establish either immediate or present danger
 or the threat of or actual domestic violence); Fleckner v. Fleckner, ___
 N.E.2d ___, 2008 WL 3198724 (Ohio App. Dist. 2008) (Where husband emailed wife
 he would I will take out all of my anger and frustration in this family
 members death sentence out on wife in court, wifes subjective fear was
 insufficient and failed an objective test of reasonableness); Ficklin v.
 Ficklin, 710 N.W.2d 387 (N.D. 2006) (threats may constitute domestic
 violence warranting protection order only if they constitute the infliction of
 fear of imminent physical harm; courts findings may not rest solely on
 perceived possibility of domestic violence rather than reasonable fear of
 actual or imminent harm); Moore v. Hall, 786 So.2d 1264 (Fla. App. 2001)
 (former husbands statement to process server that he should have killed former
 wife eleven years ago did not provide former wife with objectively reasonable
 fear of imminent domestic violence).  
Although Garcia may have subjectively feared Saski, the evidence
 is simply insufficient to demonstrate that he presented any real or imminent
 physical threat to her safety.  Accordingly, the family courts order of
 protection is reversed.  
REVERSED.
PLEICONES and BEATTY, JJ., concur. TOAL, C.J., dissenting in a
 separate opinion in which KITTREDGE, J., concurs.

Chief
 Justice Toal:  I respectfully
 dissent.  In my view, Garcias actions posed a threat of physical harm, and I
 would therefore affirm the family courts decision.
The evidence in
 this case shows that following the dogs death, Saski stated that Im the
 devil, just kill me, I couldnt help it. I couldnt stop, and I knew
 something like this was going to happen.  Additionally, Garcia testified to
 previous incidents with the dog indicating abuse.  She noted that on two
 occasions she left the dog alone in the room with Saski and subsequently heard
 the dog yelp.  Garcia also recalled an incident where she returned home from
 work and found the dog unresponsive and in shock.  Garcia stated that Saski
 told her that he found the dog in a drainage ditch and claimed it had been hit
 by a car.  Garcia testified that she feared Saski because her son lived in the
 home with her, she believed Saski could not control his actions, and Saski had
 access to a gun.  Finally, although Garcia and Saski presented different
 accounts of the incident, the family court found Garcias version to be more
 credible.
In
 my view, evidence that a household member killed an animal clearly supports a
 finding of a threat of physical harm. See S.C. Code Ann. § 20-4-20
 (providing that a family court may issue an order of protection if the petitioner proves the allegation of threat of
 physical harm by a preponderance of the evidence); Moore v. Moore, 376 S.C. 467,478, 657 S.E.2d 743, 749 (2008)
 (holding that a definitive factual finding of physical abuse is
 not required to issue an order of protection).  I therefore cannot agree with the majoritys
 conclusion that this evidence did not show that Saski posed any actual threat
 of physical harm to Garcia or her family, especially in light of the family
 courts credibility determination.  See Richland County Dept. of Soc. Servs. v. Earles, 330
 S.C. 24, 32, 496 S.E.2d 864, 868 (1998) (recognizing that because an appellate court lacks the opportunity
 for direct observation of the witness, it should accord great deference to the family courts
 findings where matters of credibility are involved).  I furthermore believe that the majority errs in
 suggesting that the facts of this case are necessarily comparable to the verbal
 or written threats that family courts in other jurisdictions have ruled did not
 constitute an objectively reasonable fear of domestic violence.  While the
 possibility and likelihood of physical harm based on these types of threats can
 vary depending upon many factors, in my view, the malicious and illegal killing
 of a household pet is a direct act of violence posing a threat of physical harm
 to household members.
Our
 legislature drafted the Protection from Domestic Abuse Act, S.C. Code Ann. §
 20-4-10 et seq., to give the family court the authority to issue orders of
 protection against a household member to protect other household members from
 abuse.  I believe that the family court in the instant case carefully reviewed
 all of the evidence presented by both sides and correctly issued the order of
 protection.  I would therefore affirm the decision.
KITTREDGE,
 J., concurs.

[1]  Garcia did not file a respondents brief.  The
 Attorney General, as amicus curiae, contends the issue is moot as the order on
 appeal expired in June 2007.  Given the potential ramifications of the order, we
 find it is not moot.  See Moore v. Moore, 376 S.C. 467, 657 S.E.2d 743
 (2008).   Further, given the orders short duration, it is a matter which is
 capable of repetition yet evading review.  Byrd v. Irmo High Sch., 321
 S.C. 426, 468 S.E.2d 861 (1996).