2010 ND 113

**Rhonda HANNEMAN, Plaintiff
and Appellee**

v.

**Arden NYGAARD, Defendant
and Appellant.**

No. 20090278.

Supreme Court of North Dakota.

June 17, 2010.

Kristen Sue Pettit, Grand Forks, N.D., for plaintiff and appellee.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Arden Nygaard appeals from a domestic violence protection order prohibiting him from committing domestic violence against Rhonda Hanneman or from having direct or indirect contact with her. Nygaard argues the district court erred in denying his motion to dismiss on the ground of res judicata and there was insufficient evidence to support the domestic violence protection order. We affirm.

I

[¶ 2] Hanneman and Nygaard have two children together from a previous relationship. On March 11, 2009, the district court issued an order prohibiting Hanneman from initiating direct or indirect contact with Nygaard's mother. On June 16, 2009, in the context of allegations that Hanneman had stabbed Nygaard during a domestic altercation on June 15, 2009, the district court issued an order requiring Hanneman to refrain from any domestic violence or direct or indirect contact with Nygaard.

[¶ 3] On July 9, 2009, Hanneman petitioned for a domestic violence protection order against Nygaard. Hanneman's handwritten affidavit in support of her petition stated there was an "altercation" between her and Nygaard on June 15, and she was arrested even though she had numerous visible bruises all over her body. Her affidavit also stated Nygaard had kicked in her apartment door many times and she had received several "hang up" phone calls throughout the night for seven to ten days after the June 15 incident. She claimed police had attributed those phone calls to Nygaard. She also stated that Nygaard was seen walking outside her apartment building at 5 a.m. a couple of weeks earlier, that she feared for her and her children's lives, that Nygaard had previously split her head open and given her many fat lips, black eyes, and bruises, and that the abuse continued while she was pregnant. She claimed she had changed locks on her residence, but Nygaard had come into her apartment through a window and forced his way through the front door. The district court issued a temporary domestic violence protection order against Nygaard, but Hanneman did not appear for a July 23, 2009, hearing on that petition and a judicial referee dismissed the petition after checking a box on a preprinted order of dismissal form that said "[p]etitioner did not appear for hearing." The dismissal did not state whether it was with or without prejudice.

[¶ 4] On August 7, 2009, Hanneman filed a second petition against Nygaard for a domestic violence protection order. Hanneman's second petition was supported by another handwritten affidavit, which stated Nygaard had used physical force against her for many years, including strangling her, punching her in the face, pulling her hair on many occasions, pushing her down to the ground, threatening

her, and assaulting her at a park around June 9. She stated she feared for her life, and on June 15, Nygaard came to her house and a physical altercation occurred between them, which resulted in her being charged with assault. She stated he has continued to call her late at night, and on July 14, he confronted a girl in Hanneman's vehicle in a grocery store parking lot while Hanneman's children were in the vehicle and Hanneman was in the store. Hanneman claimed Nygaard "has been calling my friends to tell me I'm a fucking bitch and has been sending nasty text messages to them about me." She stated that "at this time I have to have a friend stay with me because I am scared of him," and in the past, he has kicked in her apartment door and "the physical violence has been almost a daily occurrence for the last year and few months." The court issued a temporary domestic violence protection order against Nygaard.

[¶ 5] Nygaard moved to dismiss the second petition, arguing it was barred by the doctrines of res judicata and collateral estoppel. The district court denied Nygaard's motion to dismiss at the beginning of an evidentiary hearing on September 9, 2009. At the hearing, Hanneman testified that everything in her request for the domestic violence protection order was "true and correct." She testified the police had come to her house more than five times because of domestic disturbances and there was a pending aggravated assault charge against her. Nygaard denied any contact with Hanneman after June 15 and stated he "never punched her, pulled her hair while she was pregnant, [and] never kicked her in the stomach, and threatened her." Nygaard asserted Hanneman had assaulted him on June 15, and that he had not assaulted her. Nygaard's attorney claimed the petition was retaliatory because "there hasn't been any [actual physical violence]. There's no fear of imminent physical violence. The only thing has been a no-contact order that's been filed against [Hanneman] and this is why this is retaliatory. . . . We've disputed all the allegations that [Hanneman] has brought and it should be dismissed."

[¶ 6] At the conclusion of the evidentiary hearing, the district court said "[b]ased on the evidence in the record before me, I am finding there are grounds for issuance of a domestic violence protection order." The court issued a written domestic violence protection order, effective for two years, on a preprinted form on which the court entered a handwritten note finding that Nygaard "has assaulted [Hanneman] and engaged in threatening behavior." The court also checked a box on the preprinted form that stated Nygaard "represents a credible threat to the safety" of Hanneman.

## II

[¶ 7] Nygaard argues the district court erred in denying his motion to dismiss the second petition because the dismissal of the first petition precluded litigation of the second petition on the ground of res judicata. He claims the second petition is based on the same allegations as the first petition. He asserts the court did not "otherwise specif[y]" in dismissing the first petition and that dismissal was an adjudication on the merits under N.D.R.Civ.P. 41(b), which provides:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a

party under Rule 19, operates as an adjudication upon the merits.

[¶ 8] "The primary purpose for dismissing an action for failure to prosecute [under N.D.R.Civ.P. 41(b)] is to prevent unnecessary delays in the disposition of pending cases and to avoid congestion in court calendars by disposing of cases not being seriously prosecuted." *Ternes v. Knispel*, 374 N.W.2d 879, 881 (N.D. 1985) (citations and footnote omitted). Each case must be evaluated on its own particular facts and circumstances, and courts must consider several competing factors in assessing a request to dismiss for lack of prosecution under N.D.R.Civ.P. 41(b), including a court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to adverse parties from delay. *Ternes*, at 881. Those factors are balanced by a reluctance to impose the harsh remedy of dismissal in light of our policy favoring disposition of a case on the merits. *Id.* A dismissal with prejudice is a harsh and permanent remedy when it resolves a case on the merits. *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 31, 729 N.W.2d 101.

[¶ 9] In *Ternes*, we also recognized the interpretations of F.R.Civ.P. 41(b) are highly persuasive in interpreting N.D.R.Civ.P. 41(b). *Ternes*, 374 N.W.2d at 881 n. 4. A dismissal for failure to appear constitutes an adjudication on the merits under F.R.Civ.P. 41(b) if the court does not otherwise specify. *See LeBlang Motors, Ltd. v. Subaru*, 148 F.3d 680, 687 (7th Cir.1998) (treating order involuntarily dismissing action, which did not otherwise specify, as adjudication on merits under F.R.Civ.P. 41(b)); *LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 607–09 (7th Cir.1989) (same); *In re Jee*, 799 F.2d 532, 534 n. 2 (9th Cir.1986) (same); *Hines v. Delta Air*

*Lines, Inc.*, 461 F.2d 576, 579 n. 12 (5th Cir.1972) (same); *Kern v. Hettinger*, 303 F.2d 333, 340 (2nd Cir.1962) (same). *See also* 9 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2373 (2008).

[¶ 10] Professor Miller explains the effect of an involuntary dismissal under F.R.Civ.P. 41(b):

Rule 41(b) expressly provides that the district court may specify that a dismissal is without prejudice. When a district court judge exercises his discretion to so provide, a second suit is not barred....

If the court does not specify that the dismissal is without prejudice, and it comes within the terms of the final sentence of Rule 41(b), the dismissal will be with prejudice. This result is reached both when the district court expressly provides that dismissal is with prejudice and when it is silent on the matter. Indeed, one of the most useful features of Rule 41 is that it gives the court discretion about the effect of a dismissal and provides what the effect will be if the court fails to specify.

9 Miller, *Federal Practice and Procedure*, at § 2373 (footnotes omitted).

[¶ 11] Here, the order dismissing the first petition was on a preprinted "order of dismissal" form which identified a list of categories for dismissal, including "Petitioner did not appear for hearing", "Respondent did not appear for hearing", "Neither party appeared at hearing", "Insufficient evidence to justify issuance of a Permanent Order", "Insufficient evidence to justify issuance of a Temporary Order", "Petitioner requested Temporary Order be Dismissed", "Petitioner requested Permanent Order be Dismissed", and "Other," with a check box next to each of these categories. A box next to the item "Petitioner did not appear for hearing" was checked, and no other boxes on the form

were checked. The court's dismissal of the first petition reflects the action was dismissed because Hanneman did not appear for a hearing and operates as an adjudication on the merits of the allegations raised in that claim under the language of N.D.R.Civ.P. 41(b).

[¶ 12] Hanneman nevertheless argues the second petition includes new facts and allegations and is not barred by res judicata. The doctrines of res judicata and collateral estoppel bar courts from relitigating claims and issues previously litigated. *Riverwood Commercial Park*, 2007 ND 36, ¶¶ 13–14, 729 N.W.2d 101. "The applicability of res judicata or collateral estoppel is a question of law, fully reviewable on appeal." *Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 10, 721 N.W.2d 16. We have explained the difference between res judicata and collateral estoppel:

> Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to [the] parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory. Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.

*Wolt v. Wolt*, 2010 ND 33, ¶ 8, 778 N.W.2d 802 (quoting *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 10, 773 N.W.2d 420). The "doctrines of res judicata claim preclusion

and collateral estoppel issue preclusion 'should apply as fairness and justice require, and should not be applied so rigidly as to defeat the ends of justice.'" *Skogen v. Hemen Twp. Bd.*, 2010 ND 92, ¶ 17, 782 N.W.2d 638 (quoting *Riverwood Commercial Park*, at ¶ 14). We have said the burden is on the party claiming res judicata to establish the defense. *Robertson Lumber Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61, 76 (N.D.1968). *See Witzke v. City of Bismarck*, 2006 ND 160, ¶ 10, 718 N.W.2d 586 (party asserting estoppel has burden of establishing issue in second case was resolved in party's favor in prior proceeding).

[¶ 13] In *Wolt*, 2010 ND 33, ¶¶ 13–15, 778 N.W.2d 802, we recently rejected a res judicata claim in the context of a request for a domestic violence protection order that alleged additional facts beyond those involved in a prior disorderly conduct restraining order:

> Under varying factual circumstances other courts have also rejected application of res judicata to the granting of a domestic violence protection order. *See McComas v. Kirn*, 105 P.3d 1130, 1135–36 (Alaska 2005) (holding husband's crime of threats of harm against wife supported domestic violence protective order issuance, actions were not too remote in time, and order was not barred by prior denial of requested order because "a change in circumstance" justified the subsequent order); *Muma v. Muma* [115 Wash.App. 1], 60 P.3d 592, 595 (2002) (holding res judicata did not bar former wife from seeking renewed protection order against former husband even though former wife failed to renew prior order, and refusing "to construe the law so as to require that [the former wife] wait until [the former husband] commits further acts of violence against her or their children" to seek a protec-

tion order). *But see Eagle v. Johnson* [159 N.C.App. 701], 583 S.E.2d 346, 347 (2003) (holding prior complaint filed in another county seeking a domestic violence protective order and court's dismissal in the other county were admissible in current action for protective order to consider whether res judicata defense was applicable).

[¶ 14] Although Hanneman's second petition alleges some of the same general allegations as her first petition, her second petition also includes allegations that were not part of the earlier July 9 petition, including that a July 14 incident occurred at a grocery store parking lot, that Hanneman now has a friend staying with her because she is scared of Nygaard, that Nygaard has been calling and sending nasty text messages about Hanneman to her friends, and that "the physical violence has been almost a daily occurrence for the last year and few months." Although a court must find actual or imminent domestic violence before issuing a domestic violence protection order, past abusive behavior and the context and history of the relationship between the parties are relevant factors in assessing a petition for a domestic violence protection order. *Wolt*, 2010 ND 33, ¶ 18, 778 N.W.2d 802. Here, some of the allegations in Hanneman's second petition occurred after her first petition was filed, including some different factual circumstances that reflect credible assertions of continuing abusive conduct by Nygaard toward Hanneman. Under these circumstances and on this record, we conclude the district court did not err in denying Nygaard's motion to dismiss on the ground of res judicata.

### III

[¶ 15] Nygaard argues there was insufficient evidence to support issuance of the domestic violence protection order.

He claims the district court did not make any findings supporting the imminent nature of a threat of physical harm. He also asserts the court misjudged the credibility of the witnesses and clearly erred in granting the order.

[¶ 16] Proceedings for domestic violence protection orders are civil actions for injunctive relief and are summary in nature. *Ficklin v. Ficklin*, 2006 ND 40, ¶ 12, 710 N.W.2d 387; *Frisk v. Frisk*, 2005 ND 154, ¶ 8, 703 N.W.2d 341. The domestic violence statutes seek to quickly and effectively combat volatile situations before any tragic escalation. *Wolt*, 2010 ND 33, ¶ 10, 778 N.W.2d 802.

[¶ 17] A petitioner seeking a domestic violence protection order must prove "actual or imminent domestic violence" by a preponderance of evidence. *Wolt*, 2010 ND 33, ¶ 18, 778 N.W.2d 802. A district court must make findings of "actual or imminent domestic violence," and past abusive behavior as well as the context and history of the relationship between the parties are relevant factors. *Ficklin*, 2006 ND 40, ¶¶ 12–13, 710 N.W.2d 387. Section 14–07.1–01(2), N.D.C.C., defines "domestic violence" to include:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

Under N.D.C.C. § 14–07.1–02(4), when domestic violence is premised on fear, the harm feared by the petitioner must be "actual or imminent." *Ficklin*, at ¶ 13. We have construed " 'imminent' " as " '[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening;

threatening; menacing; perilous,'" while "'actual'" means "'[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible.'" *Id.* at ¶ 14 (quoting *Steckler v. Steckler,* 492 N.W.2d 76, 80–81 (N.D.1992)).

[¶ 18] A district court's finding of domestic violence is a question of fact which will not be overturned on appeal unless clearly erroneous. *Wolt,* 2010 ND 33, ¶ 17, 778 N.W.2d 802; *Ficklin,* 2006 ND 40, ¶ 11, 710 N.W.2d 387. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Wolt,* at ¶ 17; *Ficklin,* at ¶ 11. "'A choice between two permissible views of the evidence is not clearly erroneous[, and w]e respect the opportunity of the trial court to weigh the credibility of the witnesses.'" *Wolt,* at ¶ 24 (quoting *Morton County Soc. Serv. Bd. v. Schumacher,* 2004 ND 31, ¶ 16, 674 N.W.2d 505).

[¶ 19] Under N.D.R.Civ.P. 52(a), a district court trying an action upon the facts without a jury "shall find the facts specially." A district court must make findings of fact that are sufficient to enable an appellate court to understand the factual determinations made by the district court and the basis for its conclusions of law. *Rothberg v. Rothberg,* 2006 ND 65, ¶ 14, 711 N.W.2d 219. A district court's "findings of fact . . . should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding" of the district court's decision. *Id.*

[¶ 20] The proceedings in the district court were somewhat abbreviated and obfuscated by trial counsel for the parties. The district court's findings are sparse and consist of an oral statement that "[b]ased on the evidence in the record before me, I am finding there are grounds for issuance of a domestic violence protection order," a handwritten statement on a preprinted protection order that "[Nygaard] has assaulted [Hanneman] and engaged in threatening behavior," and a check in a box on the preprinted form that Nygaard "represents a credible threat to the safety of" Hanneman. This record indicates the parties' relationship is extremely contentious, and the court orally stated it was "not suggesting that Ms. Hanneman's actions have been appropriate or that either party is particularly praiseworthy with regard to their conduct in this matter." We agree with the district court's assessment. *See* N.D.C.C. § 14–07.1–02(5) (authorizing court to issue dual domestic violence protection order).

[¶ 21] Hanneman's affidavit includes statements that Nygaard had assaulted her at a park around June 9 and at her house on June 15, that there was an incident at a grocery store parking lot on July 14, that Hanneman now has a friend staying with her because she is scared of Nygaard, and that "the physical violence has been almost a daily occurrence for the last year and few months." The court questioned both Hanneman and Nygaard about the allegations in Hanneman's affidavit in support of her petition, specifically asking them if the allegations were true. Hanneman testified all the allegations in her affidavit were true, and Nygaard denied all the allegations. The district court was in the best position to weigh the credibility of the witnesses, and the court was entitled to discredit Nygaard's testimony, as well as the testimony of his mother and of a friend. *See Wolt,* 2010 ND 33, ¶ 24, 778 N.W.2d 802 (a choice between two permissible views of the evidence is not clearly erroneous). There is evidence in this rec-

ord to support the district court's findings, and we decline Nygaard's invitation to retry the case.

[¶ 22]  In its order, the court checked a box on the preprinted form which said Nygaard "represents a credible threat to the safety" of Hanneman, which, in conjunction with the specific finding of assault and evidence of threatening behavior support a finding of actual domestic violence and an ongoing and imminent threat of domestic violence.  The court's findings are sparse, but are adequate to understand the basis for its decision.  Although we require specific findings about an actual or imminent threat of domestic violence, the court's findings are sufficient to understand the reason for its decision.  We have reviewed the entire record, and we are not left with a definite and firm conviction the court made a mistake in its findings.  We conclude the court's findings are not clearly erroneous.

IV

[¶ 23]  We affirm the domestic violence protection order.

[¶ 24] DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., JOHN C. IRBY, D.J., concur.

[¶ 25] The Honorable JOHN CHARLES IRBY, D.J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 26]  I concur in part II of the majority opinion which concludes the district court did not err in denying Nygaard's motion to dismiss on the ground of res judicata.  I dissent to part III of the majority opinion, particularly that portion of paragraph 22 which concludes the trial court's findings "are sparse, but are ade-

quate to understand the basis for its decision."

[¶ 27]  I appreciate the need for brevity and the use of preprinted forms in which the trial judge merely checks the appropriate box.  These "findings" are more in the nature of conclusions and result in this Court reviewing the record to determine whether there was evidence to support the "findings."  That is our normal procedure where the issue on appeal is whether or not the findings are clearly erroneous, *i.e.,* whether or not there is evidence to support the findings.  But, when the findings are more in the nature of conclusions, this Court, rather than the trial court, can too easily become the real fact finder.  To the extent the contention is made that this Court on occasion retries the case when the standard of review is not de novo but rather whether or not the findings of the court are clearly erroneous as required by N.D.R.Civ.P. 52(a), these "sparse" findings lend credence to that contention.

[¶ 28]  Having said that, I have authored and participated in opinions which have concluded that although the findings of the trial court are less than desired, they are nevertheless adequate to understand the reasons for its decision.  My concern in this case, however, is the interplay between sections II and III of the majority opinion.  In section II, at paragraph 11, the majority concludes that the trial court's dismissal of the first petition "operates as an adjudication on the merits of the allegations raised in that claim under the language of N.D.R.Civ.P. 41(b)."  In paragraph 14, the majority notes that some of the allegations in the second petition are the same general allegations that are in the first petition but the second petition also includes allegations that were not contained in the first petition and concludes:

Here, some of the allegations in Hanneman's second petition occurred after her first petition was filed, including some different factual circumstances that reflect credible assertions of continuing abusive conduct by Nygaard toward Hanneman. Under these circumstances and on this record, we conclude the district court did not err in denying Nygaard's motion to dismiss on the ground of res judicata.

[¶ 29] But, I cannot determine from the "sparse findings" whether the trial court relied on those allegations in the second petition which were also contained in the first petition and which we conclude were adjudicated on the merits in the dismissal of the first petition under N.D.R.Civ.P. 41(b) or whether the trial court relied on the new allegations contained in the second petition. Under these circumstances I would reverse and remand for further findings of fact sufficient to enable us to understand the factual determinations made by the trial court and the basis for its conclusions of law.

[¶ 30] GERALD W. VANDE WALLE, C.J.