Filed 11/27/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 245

Bridget Niska, Petitioner and Appellee

v.

William Falconer, Respondent and Appellant

No. 20120252

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Wayne D. Goter, Judicial Referee.

REVERSED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Rachel E. Thomason, 418 East Rosser Avenue, Suite 320, Bismarck, N.D. 58501, for petitioner and appellee.

TaLisa A. Nemec, 402 1st Street NW, Mandan, N.D. 58554, for respondent and appellant.

Niska v. Falconer

No. 20120252

Sandstrom, Justice.

[¶1] 
William Falconer appeals from a domestic violence protection order prohibiting him from coming within 500 feet of Bridget Niska for three years, granting Niska temporary custody of the parties’ minor child, and ordering visitation exchanges for the child through Falconer’s mother. Falconer claims that the court erred in issuing a domestic violence protection order based on an incident of domestic violence that occurred more than seven years ago, that he acted in self-defense in the incident seven years ago, and that Niska used the process for procuring a protection order to thwart his visitation with the parties’ minor child and as a means to punish him for the parties’ failing relationship.  We conclude the judicial referee’s findings are insufficient to understand the basis for the referee’s decision, and we reverse and remand for further proceedings. 

I

[¶2] On March 15, 2012, Niska petitioned for a domestic violence protection order against Falconer, alleging he posed an immediate and present danger of domestic violence against her.  Niska’s supporting affidavit stated the parties have had a relationship at least since 2005 and had a child together in 2011.  Niska’s affidavit states Falconer was released from prison on February 21, 2012, after being incarcerated for aggravated assault against her.  
See
 
State v. Falconer
, 2007 ND 89, ¶¶ 1, 17, 732 N.W.2d 703 (affirming Falconer’s drug conviction, reversing his conviction for aggravated assault against Niska, and remanding for a new trial for failure to instruct on self-defense).  In her affidavit, Niska stated Falconer had threatened to kill her when he got out of prison and she now feared for her and her child’s lives.  She also alleged an incident occurred in 2010, when Falconer was incarcerated and was on a home visit at her home, in which she claimed the parties argued, she locked herself in her bedroom, and Falconer tore the bedroom door off the hinges.  She stated that since Falconer was released from prison, she has called the police because he has come to her house for their child and “yelled” and “screamed” at her.  She alleged “she was scared that he was going to hurt [her] again”  and she was “very afraid of [him].”  In her affidavit, Niska also described the 2005 incident involving Falconer 
which led to the aggravated assault charge that was ultimately dismissed on remand when Niska failed to cooperate with the State.  
See
 
Falconer
, at ¶ 1.  On the basis of Niska’s petition, a judicial referee granted a temporary domestic violence protection order and scheduled an evidentiary hearing.   

[¶3] At the April 2012 evidentiary hearing, Niska testified that the last time Falconer physically abused her was in the 2005 incident that led to his incarceration; that he threatened to kill her when he got out of prison; that the parties continued a relationship while Falconer was in prison and they had a child together in 2011; that Falconer “rip[ped] [her] bedroom door off the hinges” in 2010 when he was on a home visit and “she was afraid that he was going to hit” her; that there were “numerous [other] times” when he hit her; that she called the police about Falconer when he came to her house to get the child and started “yelling” and “screaming” at her; and that she was seeking the protection order now because the parties’ child “does not need to be brought up . . . in a violent household.”  Niska testified she “remember[ed] the way it felt with his hands around [her] neck,” she “remember[ed] the way it felt when [he] stumped on [her] chest,” she “remember[ed] the way it felt when [he] punched [her] in the face,” and she “remember[ed] the smile on [his] face when [he] did all these things.”   

[¶4] On cross-examination, Niska recanted her trial testimony in 
Falconer
, and she testified her original statement to the police about the 2005 incident was the truth.  
See
 2007 ND 89, ¶¶ 5, 10, 732 N.W.2d 703.  She testified she continued a relationship with Falconer while he was in prison because she “was stuck on stupid” and explained why she was seeking a restraining order now:

While he was in prison I was safe, now I am not.  I believe, if me and him are not getting along, that he will come back and do exactly what he did before.  And his saying is go for the throat with anybody, with any kind of argument, or anything.  He would tell me that all the time.  He would go for the throat.  And then the next thing you know he’s got me around the throat.  He wasn’t out just to hurt me.  He was out to kill me.  And I believe that, if I don’t have this restraining order, sooner or later he will follow through. 

[¶5] Falconer testified Niska was the aggressor in the 2005 incident and he acted in self-defense.  He testified Niska regularly visited him while he was in prison and she was his approved sponsor for home visits at her home.  Falconer denied threatening Niska after he was released from prison.  He testified Niska sought the restraining order in response to the parties’ failing relationship and issues about visitation.  

[¶6] The judicial referee issued a domestic violence protection order against Falconer effective through April 9, 2015, orally stating:

THE COURT:  Here’s what I am going to find.  I’m going to find there was domestic violence, but it was in 2005.  I’m struck by [Niska’s] testimony and rather than finding you to be dishonest, I find that your testimony today was credible. I’ve known a number of people in your same shoes who take the same course of action. And why that is I don’t know.  It is phenomenal [sic] police have to deal with every day.  Whether it’s fear, or social, or economic dependence, or what it is.  I suspect that what your [sic] doing it for now, is finally when you have a child, you have someone that your [sic] willing to fight for more than you were willing to fight for yourself.  I don’t know.  That is what I’m gathering out of it.  The evidence includes exhibits which show testimony by you where you had a chance to do something about it years ago, but you didn’t.  It’s not to say it didn’t happen.  But just—you know, that would have been the best, obviously—the best chance for you to have done something for yourself.  I will find that, as I said, there was domestic violence and I find that it was not committed in self defense.  She has a broken rib.  That’s consistent with the description of the testimony in the opinion, that she was kicked while she was on the floor.  That’s not self defense.  And she had other injuries which clearly indicate retaliation as oppose[d] to simply self defense. 

The referee made handwritten statements and findings on a preprinted domestic violence protection order, prohibiting Falconer from coming within 500 feet of Niska, granting Niska temporary custody of the parties’ minor child, and allowing Falconer unsupervised visitation of the parties’ minor child, with exchanges facilitated through Falconer’s mother.  The referee also checked a box on the preprinted form indicating Falconer “represents a credible threat to the safety” of Niska.  Falconer did not exercise his right to have the referee’s order reviewed by a district court judge under N.D. Sup. Ct. Admin. R. 13, § 11.  

[¶7] The judicial referee had jurisdiction under N.D. Const. art. VI, § 8, N.D.C.C. §§ 14-07.1-02, 27-05-06, and 27-05-30.  Falconer’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-02.  

II

[¶8] Falconer argues the referee clearly erred in finding he perpetrated domestic violence warranting a protection order, because the incident of domestic violence occurred over seven years ago in 2005, he acted in self-defense in that incident, and the underlying facts established Niska used the procedure for a protection order to thwart his visitation with the parties’ minor child and as a means to punish him for the parties’ failing relationship.  He claims there was no  evidence to support the necessity of a current protection order and argues the court’s decision was clear error induced by a misapplication of the law.  Niska responds the court did not clearly err in granting the protection order. She argues there is no statute of limitations for the occurrence of domestic violence and the court correctly interpreted the domestic violence statutes and found infliction of fear of imminent domestic abuse.  She further claims Falconer was not acting in self-defense during the 2005 incident.  

[¶9] A domestic violence protection order is a civil action primarily for injunctive relief.  
Hanneman v. Nygaard
, 2010 ND 113, ¶ 16, 784 N.W.2d 117.  
See
 N.D.C.C. ch. 14-07.1.  A district court may issue a domestic violence protection order upon a showing of “actual or imminent domestic violence” under N.D.C.C. § 14-07.1-02(4), and a party seeking a domestic violence protection order must prove actual or imminent domestic violence by a preponderance of the evidence.  
Lenton v. Lenton
, 2010 ND 125, ¶ 7, 784 N.W.2d 131; 
Hanneman
, at ¶ 17.  A district court granting a domestic violence protection order must make findings of actual or imminent domestic violence under N.D.C.C. § 14-07.1-01(2), and past abusive behavior and the context and history of the parties’ relationship are relevant factors in determining whether domestic violence is actual or imminent.  
Lenton
, at ¶ 7; 
Hanneman
, at ¶ 17.  “Domestic violence” is defined under N.D.C.C. § 14-07.1-01(2) to include:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

“[W]hen domestic violence is premised on fear, the harm feared by the petitioner must be ‘actual or imminent.’”  
Hanneman
, at ¶ 17 (quoting 
Ficklin v. Ficklin
, 2006 ND 40, ¶ 13, 710 N.W.2d 387).  We have construed “‘imminent’” as meaning “‘[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous,’” while “‘[a]ctual’” means “‘[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible.’”  
Ficklin
, 2006 ND 40, ¶ 14, 710 N.W.2d 387 (quoting 
Steckler v. Steckler
, 492 N.W.2d 76, 80-81 (N.D. 1992)).

[¶10] A district court’s finding of domestic violence is a finding of fact that will not be overturned on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a).  
Hanneman
, 2010 ND 113, ¶ 18, 784 N.W.2d 117.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.  
Id.
  Under N.D.R.Civ.P. 52(a), a district court trying an action upon the facts without a jury “must find the facts specially.”  A district court’s findings of fact must be sufficient to enable an appellate court to understand the factual determinations made by the district court and the basis for its conclusions of law.  
Hanneman
, at ¶ 19.  “A district court’s ‘findings of fact . . . should be stated with sufficient specificity to assist the appellate court’s review and to afford a clear understanding’” of the court’s decision.  
Id.
 (quoting 
Rothberg v. Rothberg
, 2006 ND 65, ¶ 14, 711 N.W.2d 219).  A district court’s findings are adequate if this Court can discern from them the factual basis for the district court’s decision.  
Rothberg
, at ¶ 14.  Whether a district court has misinterpreted a domestic violence statute is a question of law, which is fully reviewable on appeal.  
Lawrence v. Delkamp
, 2000 ND 214, ¶ 7, 620 N.W.2d 151.

[¶11] The referee made specific oral findings that Falconer’s conduct in 2005 was domestic violence and that he did not act in self-defense.  Evidence in the record supports the referee’s findings about the 2005 incident, which occurred seven years before Niska sought this domestic violence protection order.  The referee, however, made no other specific findings of actual “physical harm, bodily injury, sexual activity compelled by physical force, [or] assault” under the definition of domestic violence in N.D.C.C. § 14-07.1-01(2).  Past abusive behavior and the context and history of the parties’ relationship are relevant factors in determining whether domestic violence is actual or imminent.  
Lenton
, 2010 ND 125, ¶ 7, 784 N.W.2d 131; 
Hanneman
, 2010 ND 113, ¶ 17, 784 N.W.2d 117.  

[¶12] In 
Lenton
, 2010 ND 125, ¶ 3, 784 N.W.2d 131, we recently considered a case involving evidence of past physical and verbal abuse in conjunction with evidence of current threats of domestic violence.  We said, “Threats constitute domestic violence only if they constitute ‘the infliction of fear of imminent physical harm.’”  
Id.
 at ¶ 10.  We explained the requirement of fear of imminent harm:

We emphasize that when a finding of domestic violence is based solely on fear, the fear must be of imminent physical harm.  Section 14-

07.1-02(4), N.D.C.C., provides that a district court may enter a protection order “[u]pon a showing of actual or imminent domestic violence.”  “Domestic violence” is defined as including “physical harm” or “the infliction of fear of imminent physical harm.”  N.D.C.C. § 14-07.1-01(2).  The statutory definition plainly requires that for infliction of fear to rise to the level of domestic violence, the fear must be of “imminent physical harm.”  N.D.C.C. § 14-07.1-01(2).  We are concerned that some of our prior opinions may be misinterpreted as stating that when a finding of domestic violence is based on fear alone, infliction of fear of “actual harm” meets the standard.  
See, e.g.
, 
Wolt v. Wolt
, 2010 ND 33, ¶ 19, 778 N.W.2d 802 (“Under N.D.C.C. § 14-

07.1-02(4), when the ‘domestic violence’ justifying a protection order is premised on ‘fear,’ the harm feared by the petitioner must be ‘actual or imminent.’”); 
Ficklin v. Ficklin
, 2006 ND 40, ¶ 13, 710 N.W.2d 387 (“When the type of domestic violence justifying a domestic violence protection order is based upon fear, the harm feared by the petitioner must be ‘actual or imminent.’”).  We emphasize that a finding of domestic violence may be based on actual harm, or the infliction of fear of imminent harm, or both, but may not be based solely on the infliction of fear of actual harm that may occur at some indefinite time in the future.  “Actual” physical harm is not necessarily “imminent” physical harm, but could be physical harm occurring at some indefinite time in the future.  Section 14-07.1-01(2), N.D.C.C., plainly requires that for infliction of fear to rise to the level of domestic violence, the fear must be of “imminent physical harm.”  N.D.C.C. § 14-07.1-01(2).

Lenton
, at ¶ 12.  

[¶13] In 
Hanneman
, 2010 ND 113, ¶ 22, 784 N.W.2d 117, we considered an issue about the adequacy of a court’s findings in a case in which the court checked a box in a preprinted form indicating the respondent “represents a credible threat to the safety” of a party seeking the domestic violence protection order.  In that case, however, a majority of this Court held the court’s findings were sufficient to understand the basis of its decision because the court also made a specific handwritten finding on the preprinted form, finding the respondent “has assaulted [the petitioner] and engaged in threatening behavior.”  
Id.
 at ¶¶ 6, 22.  Here, other than the oral finding about the 2005 incident, the referee made no other findings about “physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense.”

[¶14] Although the parties’ 2005 incident is relevant to the issue of domestic violence, the parties’ history and the context of their relationship after the 2005 incident necessitate a finding of some contemporaneous actual harm or the infliction of  fear of imminent physical harm, bodily injury, or assault.  The referee did not make any findings regarding whether there has been contemporaneous actual harm or the infliction of fear of imminent physical harm, bodily injury, or assault.  The court’s preprinted findings broadly state Falconer “represents a credible threat to the safety of [Niska]” without any further specific findings or explanation, and the court’s oral findings do not explicitly indicate an infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault not committed in self-defense.  We conclude the referee’s findings are inadequate to understand the basis for his decision, and we conclude a remand for adequate findings is necessary.  

III

[¶15] We reverse the order and remand for further proceedings.

[¶16] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.